**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**WILLIAM J. HOLMES JR.,**

    **Plaintiff,**

 **v.**              **CASE NO:**

**PNC BANK, N.A.,**

    **Defendant.**

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, WILLIAM J. HOLMES JR., (hereinafter "Plaintiff" or "Mr. Holmes"), a Florida resident, by and through the undersigned counsel, hereby sues Defendant, PNC BANK, N.A. (hereinafter "Defendant," "PNC," or "Company") and alleges:

## INTRODUCTION

1.     The Plaintiff brings this action against Defendant, seeking to recover damages for unlawful discrimination and retaliation based on disability in violation of the Americans with Disabilities Act of 1990, as amended ("ADA"), 42 U.S.C. § 12101 et seq.; Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII") and its implementing Regulations; Chapter 760 of the Florida Statutes, the Florida

Civil Rights Act of 1992, as amended, § 760.10 et seq. ("FCRA"); and the Family and Medical Leave Act of 1993, as amended, 29 U.S.C. § 2601 et seq. ("FMLA").

2. As further set forth below, Plaintiff alleges that Defendant unlawfully discriminated against him, altered the terms, conditions, and privileges of his employment because of his disability, and retaliated against him for opposing discriminatory practices and filing complaints in violation of his rights under the ADA, Title VII, and the FCRA. Plaintiff further alleges that Defendant unlawfully interfered with the exercise of Plaintiff's FMLA rights and unlawfully retaliated against him for exercising those rights in violation of the FMLA.

3. As a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered actual damages: loss of income, loss of opportunity for future income, loss of benefits, and loss of future pay increases. In addition, he has suffered and continues to suffer loss of his professional and personal reputation, emotional distress, mental anguish, embarrassment, and humiliation.

4. Plaintiff has incurred costs and attorney's fees in bringing this matter.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 2000e-5. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367(a) and the principles of pendent jurisdiction.

6.      This Court has jurisdiction to grant declaratory relief, declare the rights and legal relations of the parties, and order further relief pursuant to 28 U.S.C. §§ 2201 and 2202.

7.      Venue is proper in the United States District Court for the Middle District of Florida, Orlando Division, pursuant to 28 U.S.C. §§ 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims herein occurred within this District and Division and pursuant to 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices out of which Plaintiff's claims herein arise were committed within this District and Division. All facts and circumstances arising from this dispute took place in Flagler County, Florida.

## PARTIES

8.      Plaintiff is William J. Holmes Jr., a 52-year-old male who has been diagnosed with anxiety, depression, post-traumatic stress disorder

(PTSD), and bipolar disorder. As his condition worsened during 2024, and by no later than June 21, 2024, Plaintiff's mental health conditions substantially limited one or more major life activities, including working, caring for himself, and interacting with others.

9.    Plaintiff is a member of a class protected against discrimination and retaliation based on his disability under the ADA, Title VII, the FCRA, and the FMLA.

10.    At all times material herein, Plaintiff met the definitions of "employee" and "eligible employee" under all applicable federal and state statutes.

11.    At all times material herein, Plaintiff was an employee entitled to protection as defined by the ADA, Title VII, the FCRA, and the FMLA.

12.    The Defendant, PNC BANK, N.A., is a national banking association with its principal place of business located at One Federal Place, 1819 5th Avenue N., Floor 11, Birmingham, AL 35203-2120, and corporate headquarters at Fifth Avenue and Wood, Pittsburgh, PA 15222.

13.    At all times material herein, Defendant regularly conducted, and continues to conduct, business throughout Florida, including in Flagler County, Florida, where Plaintiff worked remotely and managed the First

Coast Region consisting of thirteen branches in West Central North Florida.

14.     At all times material herein, Defendant employed more than 501 employees and met, and continues to meet, the definitions of "employer" under all applicable federal and state statutes including, but not limited to the ADA, Title VII, the FCRA, and the FMLA.

15.     Accordingly, Defendant is liable under the ADA, Title VII, and the FCRA for the unlawful discrimination and retaliation to which it subjected Plaintiff. Defendant is also liable under the FMLA for unlawfully interfering with Plaintiff's rights and for retaliating against Plaintiff in violation of the FMLA as more fully alleged herein.

## ADMINISTRATIVE PREREQUISITES

16.     Plaintiff has properly exhausted all administrative prerequisites prior to filing the instant lawsuit.

17.     On July 30, 2024, Plaintiff timely filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") against Defendant alleging, among other things, disability discrimination and retaliation (EEOC Charge No. 533-2024-01760).

18.     On June 27, 2025, Plaintiff timely dual filed a second Charge of Discrimination with the United States Equal Employment Opportunity

Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR") against Defendant alleging, among other things, disability discrimination, retaliation, and interference with FMLA rights (EEOC Charge No. 510-2025-04800).

19.     On March 31, 2026, the EEOC issued Plaintiff a Notice of Right to Sue in reference to his Charge of Discrimination (EEOC Charge No. 510-2025-04800) against Defendant.

20.     More than one hundred eighty (180) days have elapsed since the filing of Plaintiff's Charge of Discrimination and the FCHR has not conciliated or determined whether there is reasonable cause. Therefore, Plaintiff is entitled to bring his FCRA claims in the instant civil action against Defendant and jurisdiction is proper in this Court. See §§ 760.11(4)(a) and 760.11(8), Florida Statutes.

21.     All conditions precedent to bringing this action have been performed or have occurred.

### GENERAL ALLEGATIONS

22.     On March 10, 2008, Plaintiff William J. Holmes Jr. began his employment with Defendant PNC Bank, N.A. as a Branch Manager. Over the course of his 17+ year career with Defendant, Plaintiff received multiple

promotions and was recognized as a top 1% performer with more awards than years of service.

23.    In January 2016, Plaintiff was promoted to Sales & Client Experience Specialist Sr. - Retail, and in October 2019, he was promoted to Regional Manager of the First Coast Region, where he was responsible for managing thirteen branches and over 100 employees in the West Central North Florida market.

24.    Throughout his employment with Defendant, Plaintiff worked remotely from his home in Palm Coast, Florida, and never received any reprimand or disciplinary action. His performance was exemplary, and he was consistently recognized for his achievements and leadership.

25.    In July 2021, Shakesi Morris, an African American woman, became Plaintiff's direct supervisor as Market Manager for West Central North Florida. Ms. Morris managed seven regions with 200+ branches and became responsible for overseeing Plaintiff's work and performance.

26.    In late 2023, Plaintiff identified two internal candidates for Branch Manager positions: Marvin Dushing, an African American employee, and Isai Padilla, a Hispanic employee with more management experience than Dushing. Ms. Morris supported hiring Dushing but refused

to consider Padilla despite his superior qualifications and experience.

27.    In January 2024, Ms. Morris approved the hiring of a Black manager with less experience over the Hispanic manager with more experience that Plaintiff had recommended, demonstrating a pattern of discriminatory hiring practices based on race and national origin.

28.    On February 1, 2024, Plaintiff complained to Ms. Morris about the lack of adequate staffing, the increasingly hostile work environment, and what he perceived to be discriminatory practices in hiring and promotion decisions.

29.    In February 2024, Plaintiff reported the discriminatory hiring practices to Defendant's Human Resources department and Employee Relations Information Center (ERIC), seeking intervention and correction of these unlawful practices.

30.    Beginning in March 2024, as a direct result of the hostile work environment and discriminatory treatment he was experiencing, Plaintiff began suffering from anxiety, depression, and PTSD. He sought treatment from a therapist, Alba Commoras, to address these work-related mental health conditions.

31.    On March 11, 2024, Plaintiff filed a formal complaint with

Defendant's Employee Relations Information Center (ERIC) regarding Ms. Morris's creation of a hostile work environment and her discriminatory conduct.

32.    On March 15, 2024, Plaintiff discussed his complaints with Brandy Ruffner, Employee Relations Specialist, and Heidi Crates, Employee Relations Investigator, providing detailed information about the discrimination and hostile work environment he was experiencing.

33.    On March 28, 2024, Ms. Ruffner informed Plaintiff that his allegations were not substantiated, but acknowledged that there were communication issues between Plaintiff and Ms. Morris that needed to be addressed.

34.    On April 11, 2024, Joanna Diciurcio, Market Executive and Ms. Morris's supervisor, met with Plaintiff and advised him to continue working with Ms. Morris despite the ongoing problems and hostile treatment.

35.    On April 16, 2024, Plaintiff filed a complaint with Defendant's Ethics office alleging discrimination and retaliation in response to the continued discriminatory treatment and failure of management to address his legitimate concerns.

36.    Due to the severe stress and anxiety caused by the hostile work

environment and discriminatory treatment, Plaintiff's therapist recommended that he take medical leave. From May 14-26, 2024, Plaintiff took his first FMLA leave to address his deteriorating mental health condition.

37. In May and June 2024, upon Plaintiff's return from his first period of FMLA leave—which he took to care for his wife following her total knee replacement surgery—Ms. Morris directly confronted Plaintiff, stating, "I can't believe you thought that way and said these things," in reference to Plaintiff's prior complaints of discrimination, thereby evidencing retaliatory animus toward Plaintiff for his protected activities.

38. On June 21, 2024, Plaintiff's mental health condition became substantially disabling, affecting his major life activities including working, caring for himself, and interacting with others. His depression caused isolation and relational/family difficulties, requiring ongoing psychological treatment.

39. Due to his disability, Plaintiff took a second FMLA leave from June 21 through August 26, 2024. His leave was approved through Lincoln Financial and was set to continue through October 13, 2024, if needed.

40. During Plaintiff's FMLA leave, Defendant began interfering with

his disability benefits. Robin Evans, Benefits Analyst at PNC, coordinated with Lincoln Financial to prevent Plaintiff from accessing his rightful short-term disability benefits.

41.   On August 26, 2024, Plaintiff returned to work from his FMLA leave, having exhausted his available FMLA time during the May-August 2024 period.

42.   Upon his return from FMLA leave on August 30, 2024, when Plaintiff requested catch-up information and support to resume his duties after his medical leave, Ms. Diciurcio provided no assistance or support, effectively sabotaging his ability to perform his job functions.

43.   On September 9, 2024, Plaintiff returned from vacation to find that the hostile work environment and retaliatory treatment had intensified.

44.   On September 10, 2024, Ms. Morris scheduled a regular one-on-one meeting with Plaintiff, continuing her pattern of creating a hostile work environment.

45.   On September 11, 2024, Plaintiff sent emails to Human Resources about the ongoing hostile work environment and discriminatory treatment, seeking intervention and relief from the unlawful conduct.

46.   On September 12, 2024, Plaintiff attended a Regional Leadership

meeting in Orlando. Prior to the meeting, Plaintiff had communicated his concerns regarding Ms. Morris's discriminatory and retaliatory conduct to Human Resources and Defendant's management the night before, thereby making his complaints known to upper management.

47.	On September 13, 2024, at approximately 12:00 PM, Plaintiff received a phone call with Dawn Fabian from HR and Ms. Diciurcio. During this call, Ms. Diciurcio stated "If I were you, I would resign" and immediately placed Plaintiff on paid administrative leave, effectively removing him from his position.

48.	Defendant's placement of Plaintiff on administrative leave was in direct retaliation for his protected activities, including filing discrimination complaints, taking FMLA leave, and opposing discriminatory practices.

49.	Within two weeks of Plaintiff's placement on administrative leave, Defendant reassigned Plaintiff's region to Emily, a replacement Regional Manager, demonstrating that Plaintiff's removal was permanent and constituted a constructive termination.

50.	On September 18, 2024, Robin Evans at Defendant coordinated with Lincoln Financial and told them that Plaintiff was on Administrative

Leave, suggesting that they should void his short-term disability claim, constituting unlawful interference with his disability benefits.

51. On September 26, 2024, as a direct result of Defendant's interference, Lincoln Financial denied Plaintiff's short-term disability claim, stating that the company had suggested the claim should be voided.

52. On September 30, 2024, when Plaintiff contacted Lincoln Financial, an employee named Rico stated "PNC said to decline me for any leave," confirming Defendant's active interference with Plaintiff's disability benefits.

53. Despite Plaintiff's appeal of Lincoln Financial's decision, on April 16, 2025, Lincoln Financial upheld the denial of benefits based on Defendant's interference and false representations about Plaintiff's employment status and medical condition.

54. Defendant has stripped Plaintiff of all employment benefits except stock options, including medical insurance, vision coverage, and pension benefits, which were turned off for nine months as additional retaliation.

55. Defendant has demanded that Plaintiff repay wages received during his "Paid Administration" period and has threatened to terminate

him if the repayment is not made by the end of 2025, constituting ongoing harassment and constructive termination.

56.    As a direct result of Defendant's discriminatory, retaliatory, and unlawful conduct, Plaintiff continues to suffer from anxiety, depression, and PTSD, requiring ongoing therapy and psychological treatment that substantially limits his major life activities.

57.    Plaintiff has been unable to seek other employment due to his disability and the ongoing effects of Defendant's unlawful conduct, resulting in significant economic losses and emotional distress.

58.    On July 30, 2024, Plaintiff filed his first Charge of Discrimination with the EEOC (Charge No. 533-2024-01760) alleging disability discrimination and retaliation by Defendant.

59.    In response to Plaintiff's protected activity of filing an EEOC charge, Defendant escalated its retaliatory conduct, including the September 13, 2024 placement on administrative leave and interference with disability benefits.

60.    On June 27, 2025, Plaintiff filed a second Charge of Discrimination with the EEOC (Charge No. 510-2025-04800) alleging continued discrimination, retaliation, and FMLA interference by Defendant.

61.    Defendant's discriminatory and retaliatory conduct toward Plaintiff is part of a pattern of unlawful behavior. Other employees have also suffered similar treatment, including Colleen Branigan, who took a demotion in January 2024 with Ms. Diciurcio's help to escape the hostile work environment created by Ms. Morris.

62.    Similarly, employee Saquib reached out to management for assistance regarding Ms. Morris in or about October 2024, did not receive meaningful support, and subsequently resigned his employment. Upon information and belief, other employees have also left Defendant's employment after experiencing similar treatment, reflecting a broader pattern of complaints regarding Ms. Morris's management and Defendant's failure to adequately address those concerns.

63.    Plaintiff remains technically employed by Defendant but continues on indefinite administrative leave with most of his benefits stripped as ongoing punishment for his protected activities and disability.

64.    Plaintiff continues to suffer substantial economic harm, including lost wages, loss of benefits, and inability to obtain comparable employment due to his disability and Defendant's ongoing retaliatory conduct.

65.    The discriminatory, retaliatory, and unlawful conduct by Defendant has proximately caused Plaintiff's ongoing mental health disabilities and continues to exacerbate his condition, requiring continued medical treatment and substantially limiting his major life activities of working, caring for himself, and interacting with others.

## COUNT I
### VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### Disability Discrimination
### 42 U.S.C. §§ 12101–12213

66.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 65 of the General Allegations section of this Complaint as though fully set forth herein, but does not incorporate any other Count or prayer for relief.

67.    Plaintiff is an individual with a disability within the meaning of the ADA.

68.    At all times material hereto, Defendant was an employer within the meaning of the ADA.

69.    At all times material hereto, Plaintiff was employed by Defendant as Regional Manager of the First Coast Region.

70.    Plaintiff's anxiety, depression, and PTSD substantially limited

one or more major life activities, including working, caring for himself, and interacting with others.

71.   Defendant knew of Plaintiff's disability through, among other things, Plaintiff's medical leave requests, Plaintiff's communications with Human Resources and Employee Relations, Plaintiff's treatment for his mental-health conditions, and Plaintiff's disability-related need for leave and workplace support.

72.   Plaintiff was qualified to perform the essential functions of his position, with or without reasonable accommodation.

73.   After learning of Plaintiff's disability and after Plaintiff took disability-related leave, Defendant subjected Plaintiff to adverse employment actions because of his disability.

74.   Those adverse employment actions included, but were not limited to, denying Plaintiff meaningful support upon his return from leave, refusing to provide necessary catch-up information and assistance, placing Plaintiff on administrative leave, removing him from his position, stripping him of employment benefits, reassigning his region to another manager, and effectively and/or constructively terminating his employment.

75.   Defendant's conduct was motivated by Plaintiff's disability and

Defendant's perception of Plaintiff as disabled.

76.    As a direct and proximate result of Defendant's discrimination, Plaintiff has suffered and continues to suffer damages, including lost wages, lost benefits, lost earning capacity, emotional distress, mental anguish, humiliation, loss of dignity, and other pecuniary and nonpecuniary losses.

**WHEREFORE**, Plaintiff, WILLIAM J. HOLMES JR., demands judgment against Defendant, PNC BANK, N.A., for compensatory damages, equitable relief, attorneys' fees, costs, interest, and such other relief as the Court deems just and proper under the ADA, and demands trial by jury on all issues so triable.

**COUNT II**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**
**Retaliation**
**42 U.S.C. §§ 12101–12213**

77.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 65 of the General Allegations section of this Complaint as though fully set forth herein, but does not incorporate any other Count or prayer for relief.

78.    Plaintiff engaged in protected activity under the ADA by, among other things, complaining of disability discrimination, requesting disability-

related leave and support, communicating with Human Resources and Employee Relations regarding disability-related mistreatment, and filing and pursuing an EEOC Charge alleging disability discrimination and retaliation.

79.   Defendant knew Plaintiff engaged in protected activity under the ADA.

80.   After Plaintiff engaged in such protected activity, Defendant subjected Plaintiff to materially adverse employment actions.

81.   Those materially adverse actions included, but were not limited to, escalating scrutiny of Plaintiff, denying him support upon his return from leave, placing him on administrative leave, stripping him of employment benefits, interfering with disability-related benefits, reassigning his region, and effectively and/or constructively terminating his employment.

82.   Defendant took these actions because Plaintiff engaged in protected activity under the ADA.

83.   A causal connection exists between Plaintiff's protected activity and Defendant's materially adverse actions.

84.   As a direct and proximate result of Defendant's retaliation, Plaintiff has suffered and continues to suffer damages, including lost wages,

lost benefits, lost earning capacity, emotional distress, mental anguish, humiliation, loss of dignity, and other pecuniary and nonpecuniary losses.

**WHEREFORE**, Plaintiff, WILLIAM J. HOLMES JR., demands judgment against Defendant, PNC BANK, N.A., for compensatory damages, equitable relief, attorneys' fees, costs, interest, and such other relief as the Court deems just and proper under the ADA, and demands trial by jury on all issues so triable.

**COUNT III**
**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**
**Retaliation**
**42 U.S.C. § 2000e et seq.**

85.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 65 of the General Allegations section of this Complaint as though fully set forth herein, but does not incorporate any other Count or prayer for relief.

86.    At all times material hereto, Defendant was an employer within the meaning of Title VII.

87.    Plaintiff engaged in protected activity under Title VII by opposing what he reasonably believed to be unlawful discrimination in Defendant's hiring and promotion practices based on race and national

origin.

88.     Plaintiff's protected activity included, among other things, complaining to Ms. Morris, Human Resources, Employee Relations, the Ethics office, and upper management about Defendant's refusal to promote qualified Hispanic candidates and its preference for less qualified candidates of other races.

89.     Defendant knew Plaintiff engaged in protected activity under Title VII.

90.     After Plaintiff engaged in protected activity, Defendant subjected Plaintiff to materially adverse employment actions.

91.     Those materially adverse actions included, but were not limited to, escalating hostility toward Plaintiff, increased scrutiny, placement on administrative leave, removal from his role and responsibilities, reassignment of his region to another manager, stripping him of benefits, interference with his leave- and disability-related benefits, and effective and/or constructive termination.

92.     Defendant took these actions because Plaintiff opposed what he reasonably believed to be unlawful race and national origin discrimination.

93.     A causal connection exists between Plaintiff's protected activity

and Defendant's materially adverse actions.

94.    As a direct and proximate result of Defendant's retaliation, Plaintiff has suffered and continues to suffer damages, including lost wages, lost benefits, lost earning capacity, emotional distress, mental anguish, humiliation, loss of dignity, and other pecuniary and nonpecuniary losses.

**WHEREFORE**, Plaintiff, WILLIAM J. HOLMES JR., demands judgment against Defendant, PNC BANK, N.A., for compensatory damages, equitable relief, attorneys' fees, costs, interest, and such other relief as the Court deems just and proper under Title VII, and demands trial by jury on all issues so triable.

## COUNT IV
## VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT
### Disability Discrimination
### Fla. Stat. §§ 760.01–760.11

95.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 65 of the General Allegations section of this Complaint as though fully set forth herein, but does not incorporate any other Count or prayer for relief.

96.    Plaintiff is a person with a handicap and/or disability within the meaning of the Florida Civil Rights Act.

97. At all times material hereto, Defendant was an employer within the meaning of the FCRA.

98. Defendant knew of Plaintiff's disability through, among other things, Plaintiff's medical leave requests, communications with Human Resources and Employee Relations, and disability-related need for leave and workplace support.

99. Plaintiff was qualified to perform the essential functions of his position.

100. Defendant discriminated against Plaintiff because of his disability.

101. Defendant's discriminatory actions included, but were not limited to, denying Plaintiff meaningful support upon his return from leave, refusing to provide necessary information and assistance, placing Plaintiff on administrative leave, removing him from his position, stripping him of employment benefits, reassigning his region to another manager, and effectively and/or constructively terminating his employment.

102. As a direct and proximate result of Defendant's disability discrimination, Plaintiff has suffered and continues to suffer damages, including lost wages, lost benefits, lost earning capacity, emotional distress,

mental anguish, humiliation, loss of dignity, and other pecuniary and nonpecuniary losses recoverable under the FCRA.

WHEREFORE, Plaintiff, WILLIAM J. HOLMES JR., demands judgment against Defendant, PNC BANK, N.A., for compensatory damages, equitable relief, attorneys' fees, costs, interest, and such other relief as the Court deems just and proper under the FCRA, and demands trial by jury on all issues so triable.

## COUNT V
## VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT
### Retaliation
### Fla. Stat. §§ 760.01–760.11

103. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 65 of the General Allegations section of this Complaint as though fully set forth herein, but does not incorporate any other Count or prayer for relief.

104. At all times material hereto, Defendant was an employer within the meaning of the FCRA.

105. Plaintiff engaged in protected activity under the FCRA by opposing disability discrimination and by opposing discrimination in hiring and promotion based on race and national origin.

106. Plaintiff's protected activity included complaints to management, Human Resources, Employee Relations, the Ethics office, and upper management, as well as the filing and pursuit of administrative charges.

107. Defendant knew Plaintiff engaged in protected activity under the FCRA.

108. After Plaintiff engaged in protected activity, Defendant subjected Plaintiff to materially adverse employment actions.

109. Those materially adverse actions included, but were not limited to, escalating hostility toward Plaintiff, increased scrutiny, placement on administrative leave, removal from his role and responsibilities, reassignment of his region to another manager, stripping him of benefits, interference with leave- and disability-related benefits, and effective and/or constructive termination.

110. Defendant took these actions because Plaintiff engaged in protected activity under the FCRA.

111. A causal connection exists between Plaintiff's protected activity and Defendant's materially adverse actions.

112. As a direct and proximate result of Defendant's retaliation,

Plaintiff has suffered and continues to suffer damages, including lost wages, lost benefits, lost earning capacity, emotional distress, mental anguish, humiliation, loss of dignity, and other pecuniary and nonpecuniary losses recoverable under the FCRA.

WHEREFORE, Plaintiff, WILLIAM J. HOLMES JR., demands judgment against Defendant, PNC BANK, N.A., for compensatory damages, equitable relief, attorneys' fees, costs, interest, and such other relief as the Court deems just and proper under the FCRA, and demands trial by jury on all issues so triable.

**COUNT VI**
**VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT**
**Interference**
**29 U.S.C. § 2601 et seq.**

113.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 65 of the General Allegations section of this Complaint as though fully set forth herein, but does not incorporate any other Count or prayer for relief.

114.    At all times material hereto, Plaintiff was an eligible employee within the meaning of the FMLA.

115.    At all times material hereto, Defendant was an employer within

the meaning of the FMLA.

116. Plaintiff was entitled to leave under the FMLA because he suffered from a serious health condition.

117. Plaintiff requested and was granted FMLA leave from May 14 through May 26, 2024, and again from June 21 through August 26, 2024.

118. Plaintiff exercised rights protected by the FMLA by taking approved medical leave.

119. Defendant interfered with, restrained, and/or denied Plaintiff's exercise of rights under the FMLA.

120. Defendant's interference included, but was not limited to, undermining Plaintiff's ability to take and utilize protected leave free from penalty, impairing Plaintiff's return-to-work and restoration rights, using Plaintiff's leave status against him, coordinating with Lincoln Financial in a manner designed to interfere with Plaintiff's leave-related rights and benefits, and creating barriers to Plaintiff's resumption of his job duties upon returning from leave.

121. Upon Plaintiff's return from leave, Defendant failed to restore Plaintiff in a meaningful way to the terms, conditions, and privileges of employment to which he was entitled under the FMLA.

122.    Defendant's conduct violated Plaintiff's rights under the FMLA.

123.    As a direct and proximate result of Defendant's interference with Plaintiff's FMLA rights, Plaintiff has suffered and continues to suffer damages, including lost wages, lost salary, lost employment benefits, and other compensation and losses recoverable under the FMLA.

124.    Plaintiff is also entitled to equitable relief, including reinstatement and/or other appropriate equitable relief, to the extent authorized by law.

125.    Defendant did not act in good faith and had no reasonable grounds for believing its conduct complied with the FMLA, entitling Plaintiff to liquidated damages to the extent permitted by law.

WHEREFORE, Plaintiff, WILLIAM J. HOLMES JR., demands judgment against Defendant, PNC BANK, N.A., for damages, equitable relief, liquidated damages, attorneys' fees, costs, interest, and such other relief as the Court deems just and proper under the FMLA, and demands trial by jury on all issues so triable.

## COUNT VII
## VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT
### Retaliation
### 29 U.S.C. § 2601 et seq.

126.   Plaintiff re-alleges and incorporates by reference paragraphs 1 through 65 of the General Allegations section of this Complaint as though fully set forth herein, but does not incorporate any other Count or prayer for relief.

127.   At all times material hereto, Plaintiff was an eligible employee within the meaning of the FMLA.

128.   At all times material hereto, Defendant was an employer within the meaning of the FMLA.

129.   Plaintiff engaged in protected activity under the FMLA by requesting and taking approved FMLA leave.

130.   Defendant knew Plaintiff engaged in protected activity under the FMLA.

131.   After Plaintiff exercised his FMLA rights, Defendant subjected Plaintiff to materially adverse employment actions.

132.   Those materially adverse actions included, but were not limited to, denying Plaintiff necessary support upon his return from leave,

escalating scrutiny and hostility, placing Plaintiff on administrative leave, removing him from his role, reassigning his region to another manager, stripping him of benefits, and effectively and/or constructively terminating his employment.

133.    Defendant took these actions because Plaintiff exercised rights protected by the FMLA.

134.    A causal connection exists between Plaintiff's exercise of FMLA rights and Defendant's materially adverse actions.

135.    As a direct and proximate result of Defendant's retaliation, Plaintiff has suffered and continues to suffer damages, including lost wages, lost salary, lost employment benefits, and other compensation and losses recoverable under the FMLA.

136.    Plaintiff is also entitled to equitable relief, including reinstatement and/or other appropriate equitable relief, to the extent authorized by law.

137.    Defendant did not act in good faith and had no reasonable grounds for believing its conduct complied with the FMLA, entitling Plaintiff to liquidated damages to the extent permitted by law.

WHEREFORE, Plaintiff, WILLIAM J. HOLMES JR., demands

judgment against Defendant, PNC BANK, N.A., for damages, equitable relief, liquidated damages, attorneys' fees, costs, interest, and such other relief as the Court deems just and proper under the FMLA, and demands trial by jury on all issues so triable.

**DEMAND FOR TRIAL BY JURY**

Plaintiff respectfully requests a trial by jury.

Date this 12th day of April 2026.

*/s/ Jason W. Imler, Esq*
Jason W. Imler
Florida Bar No. 1004422
Alberto "Tito" Gonzalez
Florida Bar No. 1037033
**Imler Law**
23110 State Road 54, Unit 407
Lutz, Florida 33549
(P): 813-553-7709
Jason@ImlerLaw.com
Tito@ImlerLaw.com
Ashley@ImlerLaw.com
Tiffany@ImlerLaw.com