**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

WILLIAM J. HOLMES, JR.,

     Plaintiff,

v.                                                        Case No. 3:26-cv-00856-MMH-LLL

PNC BANK, N.A.,

     Defendant.

_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

**I. INTRODUCTION**

Plaintiff William J. Holmes, Jr. is a seventeen-year employee of PNC Bank, N.A. who began his employment in March 2008, was promoted to Regional Manager of the First Coast Region in October 2019, and throughout his tenure received multiple promotions, was recognized as a top 1% performer, and never received a reprimand or disciplinary action. (Compl. ¶¶ 22–24.) Holmes filed two EEOC charges against PNC — both dual-filed with the Florida Commission on Human Relations — before bringing this action. The first charge, EEOC Charge No. 533-2024-01760, filed July 30, 2024, alleged retaliation based on Holmes's opposition to discriminatory hiring practices. (Ex. A.) The second charge, EEOC Charge No. 510-2025-04800, filed June 27, 2025, contains a detailed factual

narrative describing Holmes's diagnosis of severe depression and anxiety, his FMLA-protected leave taken on his therapist's recommendation, his return to work, PNC's coordination with Lincoln Financial to void his short-term disability claim, and the adverse employment actions that followed within days of his filing an internal HR complaint while an active EEOC investigation was pending. (Ex. B.)

Plaintiff attaches both EEOC charges as exhibits hereto. Exhibit A is EEOC Charge No. 533-2024-01760, filed July 30, 2024. Exhibit B is EEOC Charge No. 510-2025-04800, filed June 27, 2025.

Defendant now moves to dismiss all seven counts, seeking dismissal with prejudice on four. As set forth below, Holmes's EEOC charges encompass his disability-based claims under the governing exhaustion standard. His Complaint, accepted as true and construed in his favor, states plausible claims under the ADA, FCRA, Title VII, and FMLA. The majority of Defendant's arguments rely on summary judgment standards, evidence disputes, and factual distinctions that are inappropriate for resolution at the pleading stage. To the extent this Court identifies any pleading deficiency, the proper remedy is leave to amend, not dismissal with prejudice.

## II. STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. A court must accept all well-pleaded allegations as true and draw all reasonable inferences in the plaintiff's favor. The Supreme Court has held that "[t]he Federal Rules do not contain a heightened pleading standard for employment discrimination suits," and that a complaint in an employment discrimination lawsuit "need not contain specific facts establishing a prima facie case of discrimination under the framework set forth in *McDonnell Douglas Corp. v. Green*." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002). A complaint need only "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

## III. MANY OF DEFENDANT'S ARGUMENTS ARE INAPPROPRIATE AT THE PLEADING STAGE

Before addressing each count, it is necessary to identify a threshold defect running through Defendant's motion: the majority of PNC's arguments depend on evidentiary standards, credibility determinations, and factual disputes that are the proper province of summary judgment — not a motion to dismiss.

PNC relies heavily on *Martin v. Fin. Asset Mgmt. Sys., Inc.*, 959 F.3d 1048 (11th Cir. 2020), and *Raney v. Vinson Guard Serv., Inc.*, 120 F.3d 1192 (11th Cir. 1997),

for the proposition that Holmes has not adequately demonstrated decisionmaker knowledge. But *Martin* was decided on summary judgment, where the court reviewed whether the plaintiff offered evidence after the close of discovery that "the decisionmaker actually knew about the employee's protected expression." *Martin*, 959 F.3d at 1053. Similarly, *Raney* was a summary judgment case in which the plaintiff offered "nothing more than an assertion based on a hunch" and "no significant probative evidence" after the close of discovery. *Raney v. Vinson Guard Serv., Inc.*, 120 F.3d 1192, 1198 (11th Cir. 1997). Applying those evidentiary standards to a Rule 12(b)(6) motion — where Holmes need only plausibly allege decisionmaker knowledge, not prove it against unrebutted denial testimony — is legally improper.

PNC also relies on *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169 (11th Cir. 2005), for the decisionmaker knowledge standard, but *Cordoba* was likewise decided on summary judgment, and the court specifically noted that the decisionmaker "had very little contact with Cordoba and averred that she 'had absolutely no inkling . . . Cordoba had any health problems,'" and that "[C]ordoba produced no evidence that directly contradicted [the decisionmaker's] testimony." *Cordoba*, 419 F.3d at 1174. None of these summary judgment standards apply at the 12(b)(6) stage.

The same defect infects PNC's adverse action arguments. *Decoste v. City of Boynton Beach*, 2026 U.S. Dist. LEXIS 23255 (S.D. Fla. 2026), on which PNC relies

for the proposition that paid administrative leave is not an adverse action, is a district court opinion that expressly acknowledged there "does not appear to be binding authority from the Eleventh Circuit that is directly on point." *Decoste*, 2026 U.S. Dist. LEXIS 23255, at *39. And *Chavous v. City of Saint Petersburg*, 2024 U.S. App. LEXIS 2132 (11th Cir. 2024), relied upon for the FMLA interference argument, was decided on summary judgment and concerned a plaintiff who was "reinstated . . . to his prior position" and "awarded back pay," leading the court to find he was "not denied a benefit to which [he] was entitled under the FMLA." *Chavous*, 2024 U.S. App. LEXIS 2132, at *4–5. Holmes's facts are materially different, as discussed below.

The Court should decline PNC's invitation to resolve factual disputes, assess the weight of allegations, or apply summary judgment evidentiary standards at the pleading stage.

## IV. ARGUMENT

### A. Holmes Has Exhausted Administrative Remedies for His Disability-Based Claims (Counts I, II, IV, V).

### 1. The Governing Standard Looks to the Scope of Investigation, Not the Boxes Checked.

A plaintiff's judicial complaint "is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of

discrimination." *Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1280 (11th Cir. 2004) (quoting *Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1332 (11th Cir. 2000)). Courts are "extremely reluctant to allow procedural technicalities to bar claims brought under [Title VII]" and "the scope of an EEOC complaint should not be strictly interpreted." *Gregory*, 355 F.3d at 1280 (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 460–61, 465 (5th Cir. 1970)). Judicial claims that "amplify, clarify, or more clearly focus" the EEOC allegations are permitted. *Gregory*, 355 F.3d at 1279 (quoting *Wu v. Thomas*, 863 F.2d 1543, 1547 (11th Cir. 1989)). Consistent with this, "[t]he facts alleged in the charge matter most for determining what can reasonably be expected to grow out of an EEOC charge; the legal theory the charging party articulates is far less important." *Patterson v. Ga. Pac., LLC*, 38 F.4th 1336, 1345 (11th Cir. 2022) (citing *Gregory*, 355 F.3d at 1280; *Batson v. Salvation Army*, 897 F.3d 1320, 1328 (11th Cir. 2018)). "We do not strictly construe EEOC charges, and we are reluctant to allow procedural technicalities to bar Title VII claims." *Patterson*, 38 F.4th at 1345 (citing *Gregory*, 355 F.3d at 1280).

## 2. The Second EEOC Charge Is Saturated With Disability Facts.

PNC's exhaustion argument collapses under examination of Holmes's second charge. The charge narrative expressly describes Holmes's therapist recommending FMLA leave "to reset my anxiety, and severe depression all related to the work environment"; his disabling symptoms — "severe depression and

anxiety" — preventing him from successfully returning to work; PNC's coordination with Lincoln Financial to void his STD claim; Robin Evans, a Benefits Analyst at PNC, informing Lincoln that Holmes was on Administrative Leave and suggesting they should void his STD claim; and Evans ultimately directing Lincoln not to permit Holmes to file an STD claim. (Ex. B at 1–2.) Any reasonable EEOC investigation into those facts would have necessarily examined Holmes's disability, PNC's knowledge of it, and any discriminatory or retaliatory treatment flowing from it. The disability-based claims in the Complaint amplify and more clearly focus the same facts presented to the EEOC.

### 3. Defendant's Reliance on *Duberry* Is Misplaced.

PNC cites *Duberry v. Postmaster Gen.*, 652 Fed. Appx. 770 (11th Cir. 2016), for the proposition that failure to raise disability claims before the EEOC forecloses them judicially. But *Duberry* is factually inapposite. In *Duberry*, the court noted that "[t]hese documents make clear that Duberry only raised her age discrimination and racial discrimination claims before the EEOC" — there were no disability or gender facts anywhere in the charge record. *Duberry*, 652 Fed. Appx. at 772. That is the opposite of Holmes's case, where the charge narrative is replete with disability content. Moreover, the *Duberry* court did not actually reach the merits of the exhaustion issue. The court affirmed on the threshold ground that the plaintiff "only makes passing references to timeliness and her EEOC right-to-sue letter,

which is insufficient to preserve these issues. Because issues not briefed on appeal are deemed abandoned . . . we affirm." *Duberry*, 652 Fed. Appx. at 772–73. The exhaustion analysis in *Duberry* was accordingly dicta from a case in which the plaintiff abandoned the issue on appeal.

## 4. Defendant Misrepresents *Ray v. Freeman.*

PNC quotes *Ray v. Freeman*, 626 F.2d 439 (5th Cir. 1980), for the proposition that "[a]llegations of new acts of discrimination, offered as the essential basis for the requested judicial review, are not appropriate." This is a selective quotation. The full passage reads:

> The foregoing is not to be taken as a requirement that allegations in judicial complaints must be the mirror image of earlier EEO filings. Nor do we suggest the barring of evidence that demonstrates post-EEO complaint discrimination. . . . As long as allegations in the judicial complaint and proof are "reasonably related" to charges in the administrative filing and 'no material differences' between them exist, the court will entertain them. . . . Judicial claims which serve to amplify, clarify, or more clearly focus earlier EEO complaints are appropriate. Allegations of new acts of discrimination, offered as the essential basis for the requested judicial review, are not appropriate.

*Ray v. Freeman*, 626 F.2d 439, 443 (5th Cir. 1980). PNC quotes only the final limiting sentence while suppressing the preceding sentences establishing the "reasonably related" standard — a standard Holmes readily satisfies given the disability facts saturating his second charge.

## 5. Even If Exhaustion Were Deficient, Dismissal With Prejudice Is Improper.

The Florida Supreme Court in *Joshua v. City of Gainesville*, 768 So. 2d 432, 435 (Fla. 2000), held that the four-year statute of limitations applies to FCRA claims

when the FCHR fails to make a reasonable cause determination within 180 days of the charge's filing. The Complaint expressly alleges: "More than one hundred eighty (180) days have elapsed since the filing of Plaintiff's Charge of Discrimination and the FCHR has not conciliated or determined whether there is reasonable cause." (Compl. ¶ 20.) PNC's assertion that the claims are time-barred and warrant dismissal with prejudice is therefore unfounded on the current record. Any deficiency is curable by amendment, and leave to amend should be freely granted. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

## B. Holmes Has Stated Plausible Disability Discrimination Claims (Counts I and IV).

### 1. The Decisionmaker Had Direct, Personal Knowledge of Holmes's Disability.

PNC argues Holmes fails to allege that any decisionmaker knew of his disability. The Complaint directly refutes this. Holmes alleges that "Defendant knew of Plaintiff's disability through, among other things, Plaintiff's medical leave requests, Plaintiff's communications with Human Resources and Employee Relations, Plaintiff's treatment for his mental-health conditions, and Plaintiff's disability-related need for leave and workplace support." (Compl. ¶ 71.) The decisionmaker was Diciurcio. The Complaint alleges that on April 11, 2024, "Joanna Diciurcio, Market Executive and Ms. Morris's supervisor, met with Plaintiff and advised him to continue working with Ms. Morris despite the

ongoing problems and hostile treatment." (Compl. ¶ 34.) The second charge further establishes that Holmes shared his therapy and mental health situation through his HR complaints, that Diciurcio was aware of his FMLA leave for depression and anxiety from June through August 2024, and that Diciurcio personally participated in the September 13, 2024 call at which she placed Holmes on administrative leave and asked him what he was "trying to do with the complaints." (Ex. B at 1–2.)

PNC's reliance on *Cordoba* for a heightened knowledge standard at the pleading stage is misplaced for an additional reason: the Eleventh Circuit in *Cordoba* reversed the district court's award of attorney's fees against the plaintiff, finding that "Cordoba's claims, though weak, were not entirely 'without foundation.'" *Cordoba*, 419 F.3d at 1188. A reversed case in which the plaintiff's claims survived the "without foundation" standard does not support harsh dismissal with prejudice here.

## 2. The "Similar Treatment" Argument Is a Factual Dispute Inappropriate for Rule 12(b)(6).

PNC argues that Holmes's allegation that Morris subjected others to "similar treatment" undermines a differential treatment theory. Whether a broader hostile environment negates disability-specific adverse treatment is a factual question that must be resolved in Holmes's favor at this stage. The Complaint pleads both

a general hostile work environment and specific adverse actions taken against Holmes after he disclosed his disability and took disability-related leave, including administrative leave, benefits stripping, and region reassignment. (Compl. ¶¶ 47, 49, 54.) These are not mutually exclusive theories.

**C. Holmes Has Stated Plausible Retaliation Claims (Counts II, III, V).**

**1. The Administrative Leave and Subsequent Actions Were Materially Adverse.**

PNC contends the administrative leave was "paid" and therefore not adverse. The Complaint alleges that Defendant "demanded that Plaintiff repay wages received during his 'Paid Administration' period and has threatened to terminate him if the repayment is not made by the end of 2025." (Compl. ¶ 55.) The second charge confirms: "[T]hey also are invoicing/billing me for the 2 checks that I received while on 'Paid Administration' that Ms. Diciurcio placed me on. In addition, if it's not paid back by end of 2025 I'll be terminated." (Ex. B at 2.) The Complaint further alleges that Defendant "stripped Plaintiff of all employment benefits except stock options, including medical insurance, vision coverage, and pension benefits, which were turned off for nine months." (Compl. ¶ 54.) A suspension retroactively converted into an unpaid obligation through a repayment demand backed by a termination threat, combined with the stripping of all major benefits for nine months, is materially indistinguishable from an unpaid suspension.

The Supreme Court held in *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006), that the antiretaliation provision covers employer actions "harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." The Court further held that an "indefinite suspension without pay could well act as a deterrent, even if the suspended employee eventually received backpay." *Burlington N.*, 548 U.S. at 73. PNC's retroactive invoice transformed the nominally "paid" leave into exactly that. PNC's reliance on *Decoste* fails for two independent reasons. First, as noted in Section III, the court itself acknowledged there is no binding Eleventh Circuit authority on whether paid leave constitutes an adverse action. *Decoste*, 2026 U.S. Dist. LEXIS 23255, at *39. Second, *Decoste* is factually distinguishable: in that case "it is undisputed that she suffered no loss of pay or benefits." *Id.* at *39 n.9. Holmes suffered precisely those losses.

PNC's reliance on *Valdes v. City of Doral*, 662 Fed. Appx. 803 (11th Cir. 2016), for the proposition that increased scrutiny constitutes only "trivial harm" fares no better. The "increased scrutiny" in *Valdes* consisted of a police chief requiring a lieutenant to seek approval before adjusting a work schedule — routine supervisory directives decided at summary judgment. *Valdes*, 662 Fed. Appx. at 811. Holmes's allegation is that HR began joining all of his calls specifically upon his return from FMLA leave as part of a coordinated pattern leading directly to his

administrative leave eighteen days later — an entirely different factual posture. (Compl. ¶ 81; Ex. B at 2.) Moreover, Holmes does not rely on increased scrutiny as a standalone adverse action; it is pled as one element of the broader pattern of adverse conduct. (Compl. ¶ 81.) And *Valdes* itself does not hold that paid administrative leave is non-adverse: the court expressly stated it would "assume for purposes of this appeal that placing Plaintiff on administrative leave pending his fitness exams constituted an adverse employment action." *Valdes*, 662 Fed. Appx. at 812.

**2. Diciurcio Had Direct, Personal Knowledge of Holmes's Protected Activity.**

The second charge establishes that Diciurcio received Holmes's March 28, 2024 email about the hostile work environment; personally participated in the April 11, 2024 meeting at which Holmes discussed his complaints; was aware of his FMLA leave from June through August 2024; and was the executive on the September 13, 2024 call — two days after Holmes sent an HR complaint on September 11, 2024, and during the same period the EEOC was requesting PNC's position statement on Charge No. 533-2024-01760. (Compl. ¶¶ 34, 39, 45, 47; Ex. B at 1–2.)

PNC's reliance on *Martin* and *Raney* for a knowledge requirement does not assist it here. As established in Section III, both are summary judgment cases involving evidentiary voids that have no application at the pleading stage. Indeed,

the *Martin* dissent found that a decisionmaker's prior knowledge of an EEOC charge, combined with an email stating the plaintiff felt "targeted," was sufficient for a jury to infer knowledge, concluding there should be "no magic words required to put [the decisionmaker] on notice." *Martin*, 959 F.3d at 1058 (Jordan, J., dissenting). Holmes's factual predicate is substantially stronger. And *Raney* itself stated in a footnote that an argument supported by "direct or circumstantial evidence" that the decisionmaker "with full knowledge of [the plaintiff's] protected expression . . . conspired to engineer [the plaintiff's] termination . . . might have presented a very different case." *Raney*, 120 F.3d at 1198 n.6. That is precisely the case Holmes presents.

**3. Causation Is Established by Temporal Proximity and Direct Knowledge.**

To establish a causal connection, a plaintiff must "demonstrate that the protected activity and the adverse action were not wholly unrelated." *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1336 (11th Cir. 1999) (quoting *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1354 (11th Cir. 1999)). "[A] plaintiff satisfies this element if he provides sufficient evidence that the decision-maker became aware of the protected conduct, and that there was close temporal proximity between this awareness and the adverse employment action." *Farley*, 197 F.3d at 1337. "The general rule is that close temporal proximity between the employee's protected conduct and the adverse employment action is sufficient circumstantial

evidence to create a genuine issue of material fact of a causal connection." *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000). Holmes returned from FMLA leave on August 26, 2024, sent an HR complaint on September 11, 2024, and was placed on administrative leave on September 13, 2024 — eighteen days after returning from FMLA and two days after the HR complaint, while the EEOC was actively requesting PNC's position statement on Charge No. 533-2024-01760. (Compl. ¶¶ 41, 45, 47.) That temporal sequence, combined with Diciurcio's direct and documented knowledge, satisfies the causation element at the pleading stage.

PNC argues that some hostility preceded Holmes's first protected complaint in February 2024. That argument is irrelevant to the post-July 2024 adverse actions — the administrative leave, benefits stripping, and region reassignment — each of which followed Holmes's July 2024 EEOC charge filing and independently support the retaliation claims. (Compl. ¶¶ 47, 49, 54, 58.)

### D. Holmes Has Stated a Viable FMLA Interference Claim (Count VI).

PNC's interference argument rests on a false premise: that Holmes's Complaint concerns only the June–August 2024 FMLA leave. It does not. Holmes's interference claim expressly encompasses PNC's conduct in connection with a second, distinct leave application initiated after September 13, 2024.

The Complaint alleges that "Robin Evans, Benefits Analyst at PNC, coordinated with Lincoln Financial to prevent Plaintiff from accessing his rightful short-term disability benefits," that "on September 18, 2024, Robin Evans at Defendant coordinated with Lincoln Financial and told them that Plaintiff was on Administrative Leave, suggesting that they should void his short-term disability claim," and that "on September 26, 2024, as a direct result of Defendant's interference, Lincoln Financial denied Plaintiff's short-term disability claim." (Compl. ¶¶ 40, 50–51.) The second charge confirms that Holmes "applied and it was approved then declined as PNC was interfering with my FMLA protection along with the managing company Lincoln Financial," and documents that Evans emailed Lincoln on September 18, 2024, stating "Our Employee Relations already has him on an Admin Leave effective 9/13, so I'm waiting to hear from them if they want us to void the [STD] claim/leave or not," before ultimately directing Lincoln to void the claim on September 23, 2024. (Ex. B at 2.)

To establish an FMLA interference claim, "an employee need only demonstrate by a preponderance of the evidence that he was entitled to the benefit denied." *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1293 (11th Cir. 2006). "The employer's motives are irrelevant." *Id.*

PNC's reliance on *Chavous* is factually inapplicable. In *Chavous*, the plaintiff was "reinstated . . . to his prior position at a hearing on August 7, 2018" and

"awarded . . . back pay from the date his FMLA leave ended . . . until August 7, 2018," leading the court to conclude he was not "denied a benefit to which [he] was entitled under the FMLA." *Chavous*, 2024 U.S. App. LEXIS 2132, at *4–5. Holmes was not reinstated, not made whole, and had a subsequent leave application denied through PNC's affirmative interference with Lincoln Financial — facts *Chavous* never addressed.

PNC's reliance on *Barreto v. WGCC, Inc.* for the proposition that STD benefits are independent of FMLA rights similarly misses the point. Holmes does not argue that the FMLA requires paid STD benefits as a matter of law. He alleges that PNC's direct coordination with Lincoln to void an already-approved FMLA leave denied him the functional benefit of his FMLA rights. (Compl. ¶¶ 50–51.) Whether that conduct crossed the line from permissible benefits administration to unlawful interference is a factual determination inappropriate for resolution at the pleading stage.

### E. Holmes Has Stated a Viable FMLA Retaliation Claim (Count VII).

A prima facie case of FMLA retaliation requires showing "(1) the employee engaged in statutorily protected conduct, (2) the employee suffered an adverse employment action, and (3) there is a causal connection between the two." *Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1234 (11th Cir. 2010). "The causal connection

element is satisfied if a plaintiff shows that the protected activity and adverse action were 'not wholly unrelated.'" *Id.* (citing *Brungart*, 231 F.3d at 799).

Holmes satisfies each element. He engaged in protected FMLA activity by taking leave from June 21 through August 26, 2024. (Compl. ¶ 39.) He suffered adverse employment actions including placement on administrative leave, region reassignment, and stripping of benefits beginning September 13, 2024 — eighteen days after returning from FMLA leave. (Compl. ¶¶ 47, 49, 54.) Causation is established by Diciurcio's direct, personal knowledge of his FMLA leave and the compelling temporal proximity between his return and the adverse actions.

PNC argues that a general allegation that "Defendant" knew of Holmes's FMLA leave is insufficient and that knowledge cannot be imputed from one corporate agent to the decisionmaker. But this is not an imputation case. The Complaint alleges that upon his return from FMLA leave on August 26, 2024, Holmes requested catch-up information and support directly from Diciurcio to resume his duties. (Compl. ¶ 42.) The second charge confirms that Diciurcio was the executive who was aware of Holmes's FMLA leave for depression and anxiety; that upon his return on August 26, 2024, Holmes reached out to Diciurcio directly for support in resuming his duties; and that Diciurcio personally participated in the September 13, 2024 call at which she told Holmes "I would resign if I were you as of right now you are being placed on Paid Administrative leave." (Ex. B at 2; see

also Compl. ¶ 47.) As *Brungart* makes clear, knowledge "cannot be imputed from other corporate officials," but where the decisionmaker herself had direct, contemporaneous knowledge — as Holmes alleges here — no imputation is necessary. *Brungart*, 231 F.3d at 799–800.

### F. In the Alternative, Holmes Should Be Granted Leave to Amend.

Under Federal Rule of Civil Procedure 15(a)(2), leave to amend should be "freely give[n] when justice so requires." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Leave should be granted absent "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Id.* None of those factors are present here. The Complaint was filed as the initial pleading and there has been no prior opportunity to amend. Every deficiency PNC identifies — specificity of decisionmaker knowledge, the distinction between Holmes's two FMLA leave periods, and the particularity of adverse action allegations — is curable through amendment. The factual record supporting each claim is well-developed and documented in the exhibits attached hereto. Dismissal with prejudice on any count would be an abuse of discretion.

### V. CONCLUSION

For the foregoing reasons, Plaintiff William J. Holmes, Jr. respectfully requests that this Court deny Defendant's Motion to Dismiss in its entirety. In the alternative, should the Court identify any count as inadequately pled, Plaintiff requests that dismissal be without prejudice and that Plaintiff be granted leave to file an amended complaint within twenty-one (21) days of the Court's Order.

Respectfully submitted,

*/s/ Jason W. Imler, Esq.*
Jason W. Imler
Florida Bar No. 1004422
*/s/ Alberto "Tito" Gonzalez*
Alberto "Tito" Gonzalez
Florida Bar No. 1037033
Imler Law
23110 State Road 54, Unit 407
Lutz, Florida 33549
(P): 813-553-7709
Jason@ImlerLaw.com
Tito@ImlerLaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 1, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record, including:

Andrew M. McKinley, Esq.
Seyfarth Shaw LLP
1075 Peachtree Street, N.E., Suite 2500
Atlanta, GA 30309-3958
amckinley@seyfarth.com
Ashley B. Rutherford, Esq.
Seyfarth Shaw LLP

233 S. Wacker Drive, Suite 8000
Chicago, IL 60606-6448
abrutherford@seyfarth.com

/s/ Jason W. Imler, Esq.
Jason W. Imler
Florida Bar No. 1004422
/s/ Alberto "Tito" Gonzalez
Alberto "Tito" Gonzalez
Florida Bar No. 1037033
Imler Law

## CERTIFICATION REGARDING USE OF GENERATIVE ARTIFICIAL INTELLIGENCE

Pursuant to the Standing Order of the Honorable Wendy W. Berger, United States District Judge for the Middle District of Florida, Jacksonville Division, dated April 2, 2026, undersigned counsel hereby certifies that generative artificial intelligence was used in the drafting and preparation of this filing. Any language drafted with the assistance of generative AI was personally reviewed by undersigned counsel for accuracy. All legal citations reference actual, non-fictitious cases or cited authority and accurately reflect the contents of such authority.

/s/ Jason W. Imler, Esq.
Jason W. Imler
Florida Bar No. 1004422
/s/ Alberto "Tito" Gonzalez
Alberto "Tito" Gonzalez
Florida Bar No. 1037033
Imler Law