**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | |
|---|---|
| **WILLIAM J. HOLMES, JR.,**<br>**Plaintiff,**<br><br>**v.**<br>**PNC BANK, N.A.,**<br>**Defendant.** | **3:26-cv-00856-CRK-LLL** |

## INTRODUCTION

Before the court is Defendant PNC Bank, N.A.'s ("PNC") motion to dismiss Plaintiff William J. Holmes, JR.'s ("Holmes") claims for discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Americans with Disabilities Act ("ADA"), and the Florida Civil Rights Act of 1992 ("FCRA"), as well as claims for interference and retaliation under the Family Medical Leave Act ("FMLA"). See Def. Mot. to Dismiss Pl. Compl., May 14, 2026, ECF No. 13 ("Def. Mot."); Compl., April 12, 2026, ECF No. 1 ("Compl."). Plaintiff responded in opposition to Defendant's motion to dismiss on June 1, 2026. Pl. Resp. to Def. Mot. to Dismiss, June 1, 2026, ECF No. 17 ("Pl. Resp."). For the reasons that follow, Defendant's motion to dismiss is granted without prejudice.

## BACKGROUND[1]

Plaintiff began working for PNC in 2008 as a branch manager and has been employed by PNC as a remote employee for over 17 years. Compl. at ¶ 22, 24. PNC is a national banking association conducting business throughout Florida that employs more than 501 employees. Id. at ¶¶ 12, 13, 14. In 2016, Plaintiff was promoted to Senior Sales & Client Experience Specialist (Retail) and was promoted again in 2019 to Regional Manager. Id. at ¶ 23. As Regional Manager, Plaintiff manages 13 branches and over 100 employees in West Central North Florida. Id. at ¶ 23. Plaintiff alleges that during his time at PNC, he was recognized for his performance and achievements and never received disciplinary action. Id. at ¶ 24. In July 2021, Shakesi Morris became Plaintiff's direct supervisor. Id. at ¶ 25. Ms. Morris is an African-American woman. Id. at ¶ 25.

Plaintiff alleges that in 2023, while Ms. Morris was Plaintiff's supervisor, Plaintiff offered two internal candidates to Ms. Morris to hire for Branch Manager positions. Id. at ¶ 26. One candidate was an African American employee, and the other was a Hispanic employee who had more management experience than the African American candidate. Id. at ¶ 26. Plaintiff alleges that Ms. Morris "refused to consider [the Hispanic candidate] despite his superior qualifications and experience," and instead approved the hiring of the African American candidate in

[1] The following facts are drawn from Plaintiff's factual allegations in the Complaint, which are accepted as true for purposes of this motion to dismiss. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (on a motion to dismiss, facts plead in allegation are considered true).

January 2024. Id. at ¶ ¶ 26–27. In February 2024, Plaintiff complained to Ms. Morris about "lack of adequate staffing, the increasingly hostile work environment, and what he perceived to be discriminatory practices in hiring and promotion decisions." Id. at ¶ 28. Plaintiff also filed a report with PNC's Human Resources ("HR") Department and Employee Relations Information Center ("ERIC"), alleging discriminatory hiring practices. Id. at ¶ 29. As a result of the alleged "hostile work environment and discriminatory treatment he was experiencing, Plaintiff began suffering from anxiety, depression, and PTSD" in March 2024. Id. at ¶ 30. On March 11, 2024, Plaintiff filed a formal complaint with ERIC, reporting Ms. Morris for "creation of a hostile work environment" and "discriminatory conduct." Id. at ¶ 31. Plaintiff brought the complaints about Ms. Morris to an employee relations specialist and employee relations investigator, who later informed Plaintiff that his allegations were "not substantiated, but acknowledged that there were communication issues between Plaintiff and Ms. Morris." Id. at ¶ ¶ 32, 33.

In April 2024, Plaintiff was advised by Ms. Morris's supervisor and Market Executive, Joanna Diciurcio, to continue working with Ms. Morris. Id. at ¶ 34. Plaintiff subsequently filed a complaint with PNC's Ethics Office, alleging discrimination and retaliation and reporting management's alleged failure to address his concerns. Id. at ¶ 35. During this time period, Plaintiff continued to suffer from stress and anxiety "caused by the hostile work environment and discriminatory treatment," and Plaintiff's therapist recommended he take medical leave. Id. at ¶ 36.

Plaintiff took FMLA leave to address his mental health from May 14–26, 2024.[2] Id. at ¶ 36. Upon Plaintiff's return from leave, Plaintiff alleges that Ms. Morris referenced his complaints of discrimination by confronting him and saying, "I can't believe you thought that way and said these things." Id. at ¶ 37. Plaintiff's mental health condition became "disabling," in June 2024, when he alleges his mental health affected his ability to work, care for himself and interact with others and required ongoing psychological treatment. Id. at ¶ 38. As a result, Plaintiff took an approved second FMLA leave from June 21 to August 26, 2024.[3] Id. at ¶ 39. Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") on July 30, 2024, alleging disability discrimination and retaliation by Defendant. Id. at ¶ 58.

When Plaintiff returned to work, he alleges he requested, but was not provided with, assistance or support from Ms. Diciurcio to help him "catch-up." Id. at ¶ 42. In September 2024, Plaintiff alleges he experienced "intensified" hostility and retaliatory treatment, alleging, for example, that Ms. Morris scheduled regular one-on-one meetings with Plaintiff. Id. at ¶ ¶ 43, 44. Plaintiff alleges that other employees experienced, and left PNC's employment or accepted demotions, after

---

[2] Plaintiff alleges that he "took his first FMLA leave to address his deteriorating mental health condition." Compl. at ¶ 36. However, Plaintiff also alleges that he took his "first period of FMLA leave" "to care for his wife following her total knee replacement surgery." Id. at ¶ 37.

[3] Plaintiff's leave was "set to continue through October 13, 2024, if needed," but by August 30, 2024, he returned to work because he alleges he had "exhausted his available FMLA time." Id. at ¶ 41.

experiencing discriminatory, retaliatory, and hostile conduct from Ms. Morris. Id. at ¶ ¶ 61, 62. On September 11, 2024, Plaintiff sent emails to HR regarding the "ongoing hostile work environment and discriminatory treatment." Id. at ¶ 45. On September 13, 2024, Plaintiff alleges he received a call from Dawn Fabian with HR and Ms. Diciurcio, in which Ms. Diciurcio told him, "[i]f I were you, I would resign," and placed Plaintiff on paid administrative leave. Id. at ¶ 47. Within two weeks of Plaintiff's placement on leave, PNC reassigned Plaintiff's region to a replacement regional manager. Id. at ¶ 49. Further, Plaintiff alleges "Robin Evans at Defendant coordinated with Lincoln Financial and told them Plaintiff was on administrative leave, suggesting that they should void his short-term disability claim," and that his disability claim was indeed, voided. Id. at ¶ ¶ 50–53.[4] Plaintiff appealed Lincoln Financial's decision, but claims the decision was upheld based on PNC's representations. Id. at ¶ 53.

Though Plaintiff remains employed by PNC, he alleges that he was stripped of "all employment benefits except for stock options, including medical and vision insurance, and pension benefits." Id. at ¶ ¶ 54, 63. Plaintiff also alleges that PNC demanded he repay wages received while he was placed on administrative leave and

[4] Although neither the Complaint nor the briefing specifically states as much, it would appear from the context in which the company is referenced that "Lincoln Financial" is an employee benefits service company connected to PNC. See id. at ¶ 39 ("[Plaintiff's] leave was approved through Lincoln Financial"); id. at ¶ 51 ("Lincoln Financial denied Plaintiff's short-term disability claim, stating that [Defendant] had suggested the claim should be voided"); id. at ¶ 53 ("Lincoln Financial upheld the denial of benefits").

has threatened to terminate him if they are not repaid. Id. at ¶ 55. On June 27, 2025, Plaintiff filed a second Charge of Discrimination with the EEOC, alleging discrimination, retaliation, and FMLA interference by Defendant. Id. at ¶ ¶ 18, 60. The EEOC issued Plaintiff a Notice of Right to Sue on March 31, 2026. Id. at ¶ 19. Plaintiff alleges that because of PNC's ongoing retaliatory conduct, he continues to suffer lost wages, loss of benefits, and ongoing mental health disabilities which do not allow him to obtain comparable employment. Id. at ¶ ¶ 64, 65.

## JURISDICTION

The court has jurisdiction over Plaintiff's claims under Title VII, the ADA and FMLA, which arise under federal law. 28 U.S.C. § 1331. The court has supplemental jurisdiction over Plaintiff's related Florida State FCRA claim. 28 U.S.C. § 1367(a).

## DISCUSSION

Defendant moves to dismiss Plaintiff's claims for disability discrimination under the ADA and FCRA, as well as his claims for disability-related retaliation under the ADA and FCRA contending Plaintiff has failed to exhaust administrative remedies. Def. Mot. at 3–6. Defendant also moves to dismiss all of Plaintiff's claims under Rule 12(b)(6) for failure to state a claim. See generally Def. Mot. Plaintiff contends that the EEOC charges he filed sufficiently exhausted administrative remedies for the ADA and FCRA disability discrimination and disability-related retaliation claims, and that Plaintiff has pleaded sufficient facts to allege claims for ADA discrimination, ADA retaliation, FCRA discrimination, FCRA retaliation, Title VII retaliation, FMLA interference, and FMLA retaliation. Pl. Resp. at 5–6. Plaintiff

argues, in the alternative, that should the court find the complaint fails to state a claim for which relief can be granted, the court should grant Plaintiff leave to amend the complaint. Id. at 19. For the reasons that follow, Plaintiff's claims are dismissed without prejudice, with leave to amend.

## I. Failure to Exhaust

Defendant moves to dismiss Plaintiff's ADA discrimination, ADA retaliation, FCRA discrimination, and FCRA retaliation claims, arguing that Plaintiff failed to exhaust his administrative remedies because his EEOC charges "did not make any reference to a purported disability discrimination or retaliation related to any disability-related manner." Def. Mot. at 3, 5. Plaintiff argues that his second EEOC claim sufficiently expresses his claims of discrimination and retaliation based on his disability and protected activity and therefore, has exhausted administrative remedies. Pl. Resp. at 5–9.

A plaintiff bringing discrimination and retaliation claims under the ADA must exhaust those claims by filing a charge of discrimination with the EEOC. See Batson v. Salvation Army, 897 F.3d 1320, 1327 (11th Cir. 2018). Likewise, a plaintiff bringing a claim under the FCRA must first exhaust administrative remedies by filing a complaint with the EEOC or the Florida Commission on Human Relations ('FCHR").[5] See Jones v. Bank of Am., 985 F. Supp. 2d 1320, 1324–1325 (M.D. Fla. 2013); Fla. Stat. § 760.11(1).

[5] The exhaustion requirement for an FCRA claim is governed by the same analysis applicable to federal claims. See Alvarez v. Royal Atl. Dev., Inc., 610 F.3d 1253, 1271

Exhaustion ensures that the EEOC has "the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts." Evans v. U.S. Pipe & Foundry Co., 696 F.2d 925, 929 (11th Cir. 1983); A claim is not barred where it is like or related to, or grew out of the allegations contained in the corresponding EEOC charge. Gregory v. Georgia Dep't of Hum. Res., 355 F.3d 1277, 1279–80 (11th Cir. 2004) ("judicial claims are allowed if they 'amplify, clarify, or more clearly focus' the allegations in the EEOC complaint") (citing Wu v. Thomas, 863 F.2d, 1543, 1547 (11th Cir. 1989) (citation omitted)). Nonetheless, exhaustion is not jurisdictional, rather it is a claims processing mechanism. Stewart v. Jones Util. and Contracting Co. Inc., 806 F. App'x 738, 740 (11th Cir. 2020) (citing Fort Bend Cnty, Texas v. Davis, 587 U.S. 541, 550–551 (2019)).

For example, the court has found that failure to mark the retaliation box in an EEOC complaint does not bar a Plaintiff from bringing a retaliation claim where the underlying complaints are "inextricably intertwined" with the discrimination claim. See Gregory, 355 F.3d at 1280 (Plaintiff's retaliation claim was not barred despite failing to allege retaliation in EEOC where her complaints of race and sex discrimination could have "reasonably been extended to encompass a claim for retaliation"); Batson, 897 F.3d at 1328 (where Plaintiff did not mark the retaliation

---

(11th Cir. 2010) (claims brought under the FCRA and Title VII are analyzed under the same framework); see, e.g., Kim v. PGA Tour, No. 3:23-cv-441-TJC-JBT, 2024 WL 280297 at *2–3 (M.D. Fla. 2026) (analyzing exhaustion of Title VII, ADA, and FCRA claims together).

box, her retaliation claim was nevertheless sufficiently exhausted where her failure to accommodate ADA claim in the EEOC was "inextricably linked" to her termination, which she later alleged in a judicial complaint was retaliatory); see also Wu, 863 F.2d at 1547 (cursory allegations in EEOC were sufficient to exhaust remedies and the complaint served to "amplify" retaliation claims made in the EEOC claim). However, the court has declined to find claims "grew out of" an EEOC charge where, for example, there was no reference to the kind of discrimination in the EEOC complaint which Plaintiff later attempts to pursue in a complaint to the court. Penaloza v. Target Corp., 549 F. App'x 844, 848 (11th Cir. 2013) (Plaintiff's EEOC charge was insufficient to exhaust disability discrimination claims because it alleged only gender and pregnancy discrimination and did not mention she had a disability); see also Chanda v. Engelhard/ICC, 234 F.3d 1219, 1225 (11th Cir. 2000) (Plaintiff's EEOC filing complaining of retaliation did not include a reference to discrimination based on national origin and thus did not exhaust the claim).

Here, Plaintiff exhausted his administrative remedies by dual-filing charges with the EEOC and the FCRA which contain facts relating to discrimination and retaliation based on legally protected activity and on his alleged disability.[6] See

---

[6] Plaintiff did not attach the charges he filed with the EEOC to his complaint. See Compl. Courts "may consider a document not attached to a pleading without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed." Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005) (citing Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002)); Jackson v. Alto Experience, 716 F.Supp.3d 1327, 1340 (S.D. Fla. 2024) (taking judicial notice of EEOC charges not attached to complaint without converting the motion to dismiss into a motion for summary judgment) (citing Hodge v. Miami Herald Co., No.

Compl. at ¶ ¶ 17, 18; EEOC Form 5 Charge of Discrimination, July 30, 2024, ECF No. 13-1 ("2024 EEOC Form"); EEOC Form 5 Charge of Discrimination, June 27, 2025, ECF No. 13-2 ("2025 EEOC Form"). Plaintiff's 2025 EEOC Form explicitly alleges retaliation for protected activity under Title VII. See 2025 EEOC Form at 1. However, the form also contains a detailed account of Plaintiff's "anxiety and severe depression all related to the work environment" which he alleges was the result of the retaliation he faced for filing complaints to human resources, a protected activity under Title VII. 2025 EEOC Form at 1, 2. Plaintiff alleges his therapist recommended he take leave under the FMLA and PNC "actively interfered with" and "sought to obstruct" his access to disability benefits, including his ability to take leave, related to his "disabling symptoms [of] severe depression and anxiety." Id. at 2. Further, the 2025 EEOC Form alleged Plaintiff was "retaliated [against] over and over again" as a result of both his initial complaint to human resources and taking FMLA leave for his anxiety and depression. Id. Viewing the 2025 EEOC as a whole, it is evident that Plaintiff's claims of ADA retaliation, ADA discrimination and parallel FCRA claims, based on his alleged disability are inextricably intertwined

---

08-20633, 2008 WL 4180012, at *2 (S.D. Fla. Sept. 10, 2008) (same); Sequera v. Hunter Douglas Fabrication Co., 184 F. Supp. 2d 1227, 1229 n.2 (M.D. Fla. 2002)). Here, the complaint references the EEOC charges sufficiently to incorporate the documents into the pleading, and parties do not dispute the EEOC charges. See generally Compl.; Def. Mot., Pl. Resp. Indeed, Defendant attached the EEOC charges to its motion to dismiss. See Def. Mot.; 2024 EEOC Form; 2025 EEOC Form. Thus, notwithstanding Plaintiff's failure to attach the EEOC charges to his complaint, the court will incorporate the EEOC charges by reference and consider the contents within the charges for the purpose of this analysis.

with the facts of the retaliation for protected activity under Title VII he claimed in the EEOC. See 2025 EEOC Form. Thus, despite the fact that Plaintiff did not specifically list "discrimination based on disability" or "retaliation based on disability" in his EEOC charge, the claims are sufficiently related to the allegations contained in Plaintiff's EEOC form, and Plaintiff has exhausted his administrative remedies under both the ADA and FCRA.

## II. Rule 8 of Federal Rules of Civil Procedure Shotgun Pleading

Plaintiff's complaint contains a single set of facts, listed as "general allegations," which constitutes a shotgun pleading and a violation of Federal Rule of Civil Procedure 8 and 10(b). Though Defendant does not argue that Plaintiff's complaint is an impermissible shotgun pleading, for the reasons set forth below, the court sua sponte dismisses the complaint without prejudice and grants Plaintiff leave to amend the complaint. See Vibe Micro, Inc. v. Shabanets, 878 F.3d 1291, 1295 (11th Cir. 2018) (Courts have inherent authority to demand "repleader" sua sponte when confronted with a shotgun pleading).

Federal Rule of Civil Procedure 8 requires that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Federal Rule of Civil Procedure 10(b) requires a complaint "state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). A shotgun pleading violates Rule 8, Rule 10(b), or both, by failing "to give the defendants adequate notice of the claims

against them and the grounds upon which each claim rests."[7] Weiland v. Palm Beach Cnty. Sheriff's Off., 792 F.3d 1313, 1320, 1323 (11th Cir. 2015). The rules' requirements benefit the court, which "must be able to determine 'which facts support which claims.'" Barmapov v. Amuial, 986 F.3d 1321, 1324 (11th Cir. 2021) (citing Weiland, 792 F.3d at 1320) (quoting T.D.S. Inc. v. Shelby Mut. Ins. Co., 760 F.2d 1520, 1544 n.14 (11th Cir. 1985) (Tjoflat, J., dissenting)). Where the complaint makes it "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief," they are not tolerated because they "waste scarce judicial resources, inexorably broaden the scope of discovery, wreak havoc on appellate court dockets, and undermine the public's respect for the courts." Anderson v. Dist. Bd. of Trustees of Cent. Fla. Cnty. Coll., 77 F.3d 364, 366 (11th Cir. 1996); Vibe Micro, 878 F.3d at 1295 (internal quotations omitted).

In the complaint here, each legal claim relies on the same block of general factual allegations, without specifying which facts support which of Plaintiff's seven claims. The complaint contains a 44-paragraph "General Allegations" section detailing several complaints Plaintiff lodged with various persons and entities, along with a myriad of adverse actions he allegedly faced at PNC. See Compl. at ¶ ¶ 22–

[7] The Eleventh Circuit has identified four categories of shotgun pleadings: first, "a complaint containing multiple counts where each count adopts the allegations of all preceding counts"; second, a complaint that is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; third, a pleading that does not separate each cause of action into a different count; and fourth, a complaint which asserts multiple claims against multiple defendants without specifying which defendants are responsible for which claim. Weiland, 792 F.3d at 1320, 1323.

65. Each count then "incorporate[s] by reference paragraphs 1 through 65 of the General Allegations section. . . ." Compl. at ¶ ¶ 66, 77, 85, 95, 103, 113, 126. Thus, the complaint constitutes a shotgun pleading because the claims for discrimination under the ADA and FCRA, retaliation under the ADA, FCRA, Title VII and FMLA, and interference under the FMLA all rely on the same "General Allegations" as factual support. See Weiland, 792 F.3d at 1324 ("a failure to more precisely parcel out and identify the facts relevant to each claim materially increase[s] the burden of understanding the factual allegations underlying each count."); see, e.g., Adams v. Huntsville Hosp., 819 F. App'x 836, 838–39 (11th Cir. 2020) (dismissing without prejudice a complaint that states all counts derive from the same set of operative facts because it "leaves the reader to speculate as to which factual allegations pertain to which count."); Magluta v. Samples, 256 F.3d 1282, 1284 (11th Cir. 2001) (impermissible shotgun pleading where "[e]ach count incorporates by reference the allegations made in a section entitled 'General Factual Allegations'"). The complaint alleges, for example, that "Plaintiff had communicated his concerns regarding Ms. Morris's discriminatory and retaliatory conduct to Human Resources and Defendant's management." Compl. at ¶ 46. Because this factual allegation is adopted by all counts, it is impossible to determine whether the "discriminatory conduct" Plaintiff reported in that instance was Ms. Morris's alleged racially discriminatory conduct underlying his retaliation claims, or disability-based discrimination underlying his ADA discrimination claim. See generally id. The "General Allegations" section describes complaints and adverse actions spanning multiple time

periods, none of which are tied to any particular count. See id. at ¶ ¶ 22–65. Indeed, as discussed below, the court was unable to find that Plaintiff had sufficiently pled causation for any count, because the pleading left ambiguous which protected act was tied to which adverse action and whether each alleged adverse action gave rise to all, some, or only one of the claims.

Because the complaint is an impermissible shotgun pleading and as explained below, fails to state a claim upon which relief can be granted, it must be dismissed. Plaintiff shall therefore be granted leave to amend the complaint to cure the deficiencies identified by the court.[8] If the Plaintiff can plead the necessary facts in support of each claim as described more fully below, Plaintiff should include in each count "only the facts germane to the respective claim." Surtain v. Hamlin Terrace Found., 789 F.3d 1239, 1243 n.1 (11th Cir. 2015).

## III. Failure to State a Claim

Defendant also moves to dismiss Plaintiff's claims for (i) discrimination under the ADA and FCRA; (ii) retaliation under Title VII and FCRA; (iii) retaliation under the ADA; (iv) retaliation under the FMLA; and (v) FMLA interference. Def. Mot. at

---

[8] In Plaintiff's response, he requests an opportunity to amend the pleading should the court find he does not state a claim for which relief can be granted. See Pl. Resp. at 20. Typically, where a request for leave to amend a complaint is "imbedded within an opposition memorandum, the issue has not been raised properly." Newton v. Duke Energy, Fla., LLC, 895 F.3d 1270, 1277 (11th Cir. 2018) (internal citations omitted). However, where the court finds the plaintiff has filed a shotgun pleading, is represented by counsel, and fails to otherwise request leave to amend, the district court "must sua sponte give him one chance to replead before dismissing his case with prejudice." Vibe Micro, 878 F.3d at 1296. Thus, the court grants Plaintiff leave to amend sua sponte.

6–8, 8–15, 18–19. For each of these claims, Defendant argues that Plaintiff fails to plead sufficient facts to state plausible claims for relief. See generally id. Plaintiff claims that he has pleaded sufficient facts for all his claims and that many of Defendant's arguments are not suitable for a motion to dismiss. See generally Pl. Resp. For the reasons that follow, each of the Plaintiff's claims is dismissed without prejudice for failure to state a claim.

**A. ADA and FCRA Discrimination**

Plaintiff alleges Defendant unlawfully discriminated against him because of his mental health conditions. Compl. at ¶ ¶ 73, 100. Defendant moves to dismiss Plaintiff's claim for ADA and FCRA discrimination based on his disability, arguing that he fails to state a claim that PNC engaged in unlawful discrimination because the "[c]omplaint is devoid of any facts which 'support a reasonable inference' that PNC treated others outside Plaintiff's protected class more favorably" and fails to plead that any decision-maker was aware of his alleged disability. Def. Mot. at 6–7. Plaintiff argues that Ms. Diciurcio was the decision-maker and was aware of his disability. Pl. Resp. at 9–10 (citing Compl. at ¶ 34 which states "On April 11, 2024, Joanna Diciurcio, Market Executive and Ms. Morris's supervisor, met with Plaintiff and advised him to continue working with Ms. Morris despite the ongoing problems and hostile treatment.")

To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, a complaint must plead sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570

(2007); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Fed. R. Civ. P. 12(b)(6). A claim is facially plausible where the plaintiff provides sufficient factual detail to allow the court to reasonably infer that the defendant is liable for the alleged misconduct. Ashcroft, 556 U.S. at 678. In evaluating plausibility, the court accepts well-pleaded facts as true and draws reasonable inferences in the plaintiff's favor, but it does not credit legal conclusions cast as factual allegations. Ashcroft, 556 U.S. at 678–79. Although detailed factual allegations are unnecessary, the complaint must allege more than "labels and conclusions" or "a formulaic recitation of the elements of the cause of action." Twombly, 550 U.S. at 555. For the reasons that follow, Plaintiff's claims for discrimination under the ADA and FCRA, retaliation under Title VII, FCRA and ADA, retaliation under the FMLA and interference under the FMLA are dismissed without prejudice.

The ADA and FCRA protect individuals from discrimination on the basis of disability. 42 U.S.C. § 12101(b)(1); Fla. Stat. § 760.01(2). Disability discrimination claims under the FCRA and the ADA are analyzed using the same framework. See Holly v. Clairson Industries, L.L.C., 492 F.3d 1247, 1255 (11th Cir. 2007). To establish a prima facie case of discrimination, the plaintiff must allege that he "(1) is disabled; (2) is a qualified individual; and (3) was discriminated against because of his disability."[9] Beasley v. O'Reilly Auto Parts, 69 F.4th 744, 754 (11th Cir. 2023)

[9] In its motion, Defendant argues that to establish disability discrimination a plaintiff must plead "her employer treated similarly situated employees outside her class more favorably." Def. Mot. at 6 (citing Byrd v. Florida Int'l Univ. Bd. Of Trs., No. 24-cv-23991, 2025 WL 1938344 (S.D. Fla. July 14, 2025)). Byrd involved a claim

(citing Lucas v. W.W. Grainger, Inc., 257 F.3d 1249, 1255 (11th Cir. 2001)). A disability under the ADA is (1) a "physical or mental impairment that substantially limits one or more major life activities of [an] individual;" (2) a "recording of such an impairment;" with respect to the individual or (3) the individual "being regarded as having such an impairment." 42 U.S.C. § 12102(1)(A)–(C). A qualified individual is an individual with a disability who "with or without reasonable accommodation can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); Stanley v. City of Sanford, Florida, 83 F.4th 1333, 1337 (11th Cir. 2023). Plaintiff cannot succeed on a claim of discrimination under the ADA where he does not allege that a decision-maker was aware of his disability. See Colclough v. Gwinnett Public Schools, 734 F. Appx. 660, 663 (11th Cir. 2018) (citing Morisky v. Broward Cty., 80 F.3d 445, 447 (11th Cir. 1996)). "Vague or conclusory statements revealing an unspecified incapacity are not sufficient to put an employer on notice of an employee's disability." Colclough, 734 F. Appx. at 663 (citing Morisky, 80 F.3d at 448).

Discrimination under the ADA includes (1) failure to accommodate (2) disparate treatment, and (3) constructive discharge. See Cole v. Young, No. 25-11875,

---

of racial discrimination and is inapposite to a claim of disability discrimination. See id. For disability discrimination a plaintiff must allege sufficient facts to plausibly suggest "(1) that he suffers from a disability, (2) that he is a qualified individual, and (3) that a 'covered entity' discriminated against him on account of his disability." Surtain, 789 F.3d at 1246. There are several theories by which a plaintiff can allege ADA discrimination including: (i) failure to accommodate (2) disparate treatment or (3) constructive discharge. See Cole v. Young, 2026 WL 2225600, at *12 (11th Cir. Aug. 3, 2026).

2026 WL 2225600 at *11–12 (11th Cir. 2026). An employer's failure to reasonably accommodate is only actionable under the ADA if the failure "negatively impacts the employee's hiring, advancement, discharge, compensation, training, and other terms, conditions, and privileges of his employment." Beasley, 69 F.4th at 754 (citing 42 U.S.C. § 1211(a)); Holly, 492 F.3d at 1263 n.17). However, "an employer's failure to reasonably accommodate a disabled individual is itself discrimination, and the plaintiff does not bear the additional burden of having to show that the employer acted in a discriminatory manner toward its disabled employees." Palmer v. McDonald, 624 F. App'x 699, 706 (11th Cir. 2015) (citing Holly, 492 F.3d at 1262). Nor is the plaintiff required to establish that his disability was the sole basis for his discrimination; he need only allege that his disability was a determinative factor. See Farley v. Nationwide Mutual Ins. Co., 197 F.3d 1322, 1334 (11th Cir. 1999).

Disparate treatment and constructive discharge claims require plaintiff to plead intentional conduct because of the disability. Palmer v. McDonald, 624 F. App'x 699, 705 (11th Cir. 2015) (plaintiff must allege facts that would show that management's actions were based solely on plaintiff's disabilities). For disparate treatment, a complaint must allege facts suggesting the employer took discriminatory actions, treating the employee less favorably than non-protected employees because of the employee's disability. See Cole, 2026 WL 2225600 at *10. For a constructive discharge claim the plaintiff must allege that the employer deliberately made the work environment intolerable on account of the person's disability. See Menzie v. Ann Taylor Retail, Inc., 549 F. Appx. 891, 894–95 (11th Cir. 2013).

Here, Plaintiff has not sufficiently alleged that there was either a failure to accommodate Plaintiff or that his disability was a determinative factor in any of Defendant's alleged actions. To begin, consistent with the shotgun pleading discussion above, it is unclear from the complaint whether Plaintiff alleges discrimination in the form of a failure-to-accommodate, disparate treatment, or discriminatory discharge.[10] See Compl. at ¶¶ 66–76. Plaintiff's ADA count alleges only "disability discrimination," followed by an undifferentiated list of alleged adverse actions. Id. at Count I. Plaintiff alleges that PNC "den[ied] [him] meaningful support upon his return from leave, refus[ed] to provide necessary catch-up information and assistance, plac[ed] Plaintiff on administrative leave, remov[ed] him from his position, stripp[ed] him of employment benefits, reassign[ed] his region to another manager, and effectively and/or constructively terminat[ed] his employment." See id. at ¶ 75. At no point does the complaint supply facts to allege

[10] Because the pleading requirements vary under each legal theory of discrimination, (i.e., failure to accommodate, disparate treatment, or constructive discharge) and Plaintiff fails to clearly plead any theory, the complaint cannot survive a motion to dismiss. See, e.g., Hart v. Bear Staffing Services, Inc., No. 2:20-cv-554-JLB-NPM, 2021 WL 1662766 at *2 (M.D. Fla. Apr. 28, 2021) (finding a complaint insufficient where the Count alleged "Failure to Accommodate and Discriminatory Discharge in Violation of [the ADA]" because it failed to distinguish the distinct legal claims); Parsons v. First Quality Retail Servs., LLC, No. 5:10-CV-145 CAR, 2012 WL 174829 (M.D. Ga. Jan. 20, 2012) ("ultimately, a disparate treatment disability discrimination claim is conceptually different than a failure to accommodate claim"). Plaintiff claims "After learning of Plaintiff's disability and after Plaintiff took disability-related leave, Defendant subjected Plaintiff to adverse employment actions because of his disability." Compl. ¶73.

these actions constitute disparate treatment, failures to accommodate or discriminatory discharges. See id. at ¶ 75.

Even assuming Plaintiff attempts to state a claim for failure to accommodate, or constructive discharge, the complaint lacks any facts allowing an inference that any failure of PNC to accommodate his mental health disability impacted the hiring, promotion, firing, compensation, training, or other terms, conditions, or privileges of Plaintiff's employment. See Beasley, 69 F.4th at 754. Plaintiff makes only conclusory statements that PNC "subjected Plaintiff to adverse employment actions because of his disability," but does not provide facts connecting any of the adverse actions to his disability. Compl. at ¶ 73; see, e.g., Andrews v. City of Hartford, 700 F. Appx. 924, 926–27 (11th Cir. 2017) (affirming dismissal of a disability claim because the plaintiff relied on the "conclusory statement that he was fired because of his disability, which was not sufficient to state a discrimination claim").

Further, beyond a general allegation that "Defendant knew of Plaintiff's disability through, among other things, Plaintiff's medical leave requests, Plaintiff's communications with Human Resources and Employee Relations, Plaintiff's treatment for his mental-health conditions, and Plaintiff's disability-related need for leave and workplace support," Plaintiff fails to identify a decision-maker that had actual knowledge of his disability. See Compl. at ¶ 71; see generally id. Even construing the complaint broadly, the most that could be inferred is that Ms. Diciurcio was aware of Plaintiff's family medical leave because Plaintiff requested her support

upon his return from FMLA leave.[11] See id. at ¶ 42 ("Upon his return from FMLA leave on August 30, 2024, when Plaintiff requested catch-up information and support to resume his duties after his medical leave, Ms. Diciurcio provided no assistance or support, effectively sabotaging his ability to perform his job functions.") However, Plaintiff does not plausibly allege that Ms. Diciurcio was aware that he took FMLA leave because of his mental health condition, that his mental health condition amounted to a disability, or what his condition was upon return from leave. See Compl. at ¶ 42; see Colclough, 734 F. Appx. at 663 ("Vague or conclusory statements revealing an unspecified incapacity are not sufficient to put an employer on notice of an employee's disability."). Thus, Plaintiff's ADA and FCRA discrimination claims are dismissed without prejudice for failure to state a claim.

**B. Title VII & FCRA Retaliation**

Plaintiff alleges Defendant retaliated against him unlawfully by placing him on administrative leave and putting a replacement in his position because he filed a complaint with HR, a protected activity under Title VII, and the FCRA. Compl. at ¶ ¶ 87, 88, 89, 91. Defendant moves to dismiss Plaintiff's Title VII and FCRA retaliation claims, arguing that Plaintiff provides only conclusory allegations that he experienced hostility and scrutiny and fails to plead facts that indicate his placement on paid leave, reassignment, loss of benefits or alleged "denial of support" "rise to the

[11] Indeed, Plaintiff states in his Complaint both that he took his first FMLA leave "to care for his wife following her total knee replacement surgery," and also that his first FMLA leave was to "to address his deteriorating mental health condition." Compl. at ¶ ¶ 36, 37.

level of an adverse action." Def. Mot. at 11–15. Further, Defendant argues Plaintiff has failed to plead that any decision-maker knew that Plaintiff participated in protected activity and thus fails to plead the causation element of his retaliation claims. Id. at 13. Plaintiff argues he has pled that (i) his leave was unpaid because PNC has demanded he repay wages he received during the leave; (ii) Ms. Diciurcio knew about his protected activity; and (iii) the temporal sequence establishes causation. Pl. Resp. at 11 (citing Compl. at ¶ 55); id. at 13 (citing Compl. ¶ ¶ 34, 39, 45, 47; id. at 14–15 (citing Compl. at ¶ ¶ 47, 49, 54, 58).

The anti-retaliation provisions of Title VII and the FCRA make it unlawful for "an employer to discriminate against any of [its] employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. §§ 2000e-3(a) (Title VII); Fla. Stat. § 760.10(7). Retaliation claims made under Title VII, the ADA and FCRA follow the same analysis. Russell v. City of Tampa, Fla., 737 F. App'x 922 (11th Cir. 2018) (citing Harper v. Blockbuster Ent. Corp., 139 F.3d 1385 (11th Cir. 1998) (applying Title VII retaliation analysis to an FCRA retaliation claim)). To state a prima facie claim of retaliation, a plaintiff must allege that (1) he engaged in a statutorily protected activity; (2) he suffered an adverse action; and (3) the adverse action was causally related to the protected activity. See Harper v. Blockbuster Ent. Corp., 139 F.3d 1385 (11th Cir. 1998) (stating elements on a motion to dismiss); see

also Gogel v. Kia Motors Mfg of Georgia, Inc., 967 F.3d 1121, 1134 (11th Cir. 2020) (repeating same elements on a summary judgment motion).

To claim he engaged in a protected act, the plaintiff need not allege that the employer's practice leading to the protected action was unlawful. Harper, 139 F.3d at 1388. Rather, "a plaintiff has engaged in 'statutorily protected activity' when he or she opposes the employer's conduct if the plaintiff demonstrates a 'good faith, reasonable belief' that the employer's conduct was unlawful." Harper, 139 F.3d at 1388 (citing Little v. United Tech., Carrier Transicold Division, 103 F.3d 956, 960 (11th Cir.1997)).

An adverse employment action is retaliatory only when the action is "materially adverse," which means that it causes "significant harm." Wrightson v. Sec'y of Treasury, No. 25-13676, 2026 WL 2254495 at *2 (11th Cir. 2026) (citing Muldrow v. City of St. Louis, 601 U.S. 346, 357 (2024)). A significant harm is one that would dissuade a reasonable employee from making or supporting a claim of discrimination. See id.

A causal connection can be alleged by establishing a "close temporal proximity" between the time an employer learned about protected activity and the adverse employment action. See Shannon v. Bellsouth Telecomm., Inc., 292 F.3d 712, 716 (11th Cir. 2002) (citing Bass v. Bd. of Cnty Comm'rs, 256 F.3d 1095, 1119 (11th Cir. 2001)). A period of three or four months between the "statutorily protected expression" and the adverse action is too attenuated to allege causation, absent other evidence. Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007).

Further, a plaintiff cannot plead causation where he does not allege the decision-maker who implemented the adverse action was aware of the protected act. Wrightson, 2026 WL 2254495 at *2; Smith v. Metro. Sec. Serv., Inc., 537 F. Appx. 864, 867 (11th Cir. 2013) (citing Raney v. Vinson Guard Serv., Inc., 120 F.3d 1192, 1197 (11th Cir. 1997) ("in a case involving a corporate defendant the plaintiff must show that the corporate agent who took the adverse action was aware of the plaintiff's protected expression")).

Here, Plaintiff alleges he faced three types of adverse action: (1) a hostile work environment;[12] (2) "effective" and "constructive" removal from his position and (3) loss of benefits. See Compl. at ¶¶ 30, 37, 44, 47, 49, 51. Throughought the complaint, Plaintiff claims that after he complained about discriminatory hiring practices, he experienced a "hostile work environment," but his complaint lacks factual allegations to support his conclusion. Id. at ¶¶ 28–32, 36, 43–45, 61 (referencing hostile work environment with no details). Plaintiff supports his claim that he faced hostility by alleging that in June 2024, Ms. Morris confronted him, stating "'I can't believe you thought that way and said these things,' in reference to Plaintiff's prior complaints of discrimination." Id. at ¶ 37. He also alleges that Ms. Morris scheduled a "regular one-on-one meeting with Plaintiff" which amounted to a hostile work environment.

12 Title VII provides protection for an employee from enduring a hostile work environment due to retaliation for a protected activity. See Manley v. Dekalb Cnty, GA, 587 F. Appx. 507, 513–514 (11th Cir. 2014). Plaintiff in his complaint brings only a Title VII retaliation claim, not an independent "hostile work environment" claim. See generally Compl. Thus, the court analyzes the allegations of hostility only within the Title VII retaliation framework.

Id. at ¶¶ 44. Plaintiff also alleges that upon his return from FMLA leave in August 2024, he was not provided assistance or support from Ms. Diciurcio and thus, his job performance was "sabotaged." Id. at ¶ 42. Plaintiff fails to provide facts which would allow a jury to conclude the regular one-on-one meetings or the alleged "sabotage" amount to significant harm. See Twombly, 550 U.S. at 570. Without additional factual content, a comment from his supervisor, regular one-on-one meetings, and allegations of "sabotage" are insufficient to allege an "adverse action" for purposes of a Title VII or FCRA claim, as they do not allow an inference that a reasonable employee would be dissuaded from making a complaint of discrimination. See Wrightson, 2026 WL 2254495 at *3 ("conclusory allegations of increased scrutiny, unreasonable deadlines, and sabotage of [] work do not establish the kind of significant harm required to constitute adverse employment actions under Title VII's anti-retaliation provision.").

Plaintiff also alleges he faced "effective" and "constructive" termination of his position when he was placed on paid administrative leave, his duties were reassigned, and he was asked to pay back the wages he received during the paid leave. Compl. at ¶ ¶ 47, 49, 53, 54, 55. District courts have regularly found that paid administrative leave does not amount to an adverse employment action supporting a retaliation claim. See Decoste v. City of Boynton Beach, 818 F.Supp.3d 1360, 1382–83 (S.D. Fla. 2026) (collecting cases). However, Plaintiff argues that he was asked to repay the wages that he was paid during leave, that his region was "reassigned," and that he was stripped of his benefits, which constitutes a "constructive termination." Compl.

at ¶ 49; Pl. Resp. at 11 ("a suspension retroactively converted into an unpaid obligation through a repayment demand backed by a termination threat, combined with the stripping of all major benefits for nine months is materially indistinguishable from an unpaid suspension."). Because an employment action is adverse where it would "dissuade a reasonable employee from making or supporting a claim of discrimination," it is conceivable that, when viewed together, the actions were adverse for the purposes of his claim. See, e.g., Debe v. State Farm Mut. Auto. Ins. Co., 860 F. Appx. 637, 640 (11th Cir. 2021).

However, even assuming Plaintiff's allegations that he was stripped of benefits, his duties were reassigned, and he was asked to repay wages amount to "adverse actions," Plaintiff fails to allege facts from which the court could infer a causal connection between Plaintiff's complaints of discrimination and his denial of benefits. The complaint's "shotgun" character makes the causation element indecipherable, because Plaintiff fails to create a chain of causation linking any one of the various protected acts to the adverse actions he alleges. See generally Compl.

The pleading standard for causation requires Plaintiff construct a causal chain between protected act and adverse action using temporal proximity and decision-maker knowledge. See Greene v. Alabama Dep't of Rev., 746 F. App'x 929, 931 (11th Cir. 2018). Plaintiff does not do so here. Plaintiff claims that at some point after September 2024, his duties were reassigned, he was "stripped of all employment benefits," and asked to repay wages, but does not provide factual detail regarding when these adverse actions took place. Compl. at ¶ ¶ 51–54. Although Plaintiff

alleges Ms. Diciurcio was the decision maker who placed him on administrative leave, Id. at ¶ 47, Plaintiff does not identify the decision-maker who "stripped [him] of all employment benefits" or asked to repay wages. Nor does he allege that any decision-maker was aware of his statutorily protected speech. Id. at ¶ ¶ 51–54; see Ramirez v. Walmart, Inc, No. 23-13702, 2024 WL 4880378 at *2–3 (11th Cir. 2024) (on a motion to dismiss Plaintiff failed to allege facts supporting plausible inference of retaliation because she did not identify (1) who she made her harassment complaints to; (2) who made the decision to take adverse action against her; or (3) whether the individual who took the adverse action against her was aware of her complaints); cf. Santana v. Telemundo Network Grp. LLC., No. 22-13879, 2026 WL 180272 at *10 (11th Cir. 2026) (the complaint sufficiently identified the individuals involved in the adverse employment actions and supported allegations with "specific examples showing [the identified decision-makers] not only made adverse employment decisions but did so with knowledge of [plaintiff's] protected activity.").

Indeed, Plaintiff does not identify a corporate agent within HR or management that he communicated his concerns about Ms. Morris's discriminatory behavior to and does not allege that any decision-maker was aware that he filed either EEOC charge. See Compl at ¶ 29 ("In February 2024, Plaintiff reported the discriminatory hiring practices to Defendant's Human Resources department and Employee Relations Information Center"); id. at ¶ 31 ("On March 11, 2024, Plaintiff filed a formal complaint with Defendant's Employee Relations Information Center regarding Ms. Morris's . . . discriminatory conduct"); id. at ¶ 35 ("On April 16, 2024,

Plaintiff filed a complaint with Defendant's Ethics office alleging discrimination and retaliation in response to the continued discriminatory treatment"); id. at ¶ 45 ("On September 11, 2024 Plaintiff sent emails to Human Resources about the ongoing hostile work environment and discriminatory treatment"); id. at ¶ 46 ("Plaintiff had communicated his concerns regarding Ms. Morris's discriminatory and retaliatory conduct to Human Resources and Defendant's management"); see also Greene v. Alabama Dep't of Rev., 746 F. Appx. 929, 932 (11th Cir. 2018) (dismissing retaliation claim where a plaintiff did not identify anyone at his employer who was aware of his EEOC complaints). Thus, without other factual allegations supporting causation, or identifying relevant decision makers and their awareness of his statutorily protected speech, Plaintiff's claims must fail. Plaintiff's allegations fail to provide facts from which the court could infer a causal connection between the EEOC charges and Plaintiff's loss of benefits or wages. Plaintiff's Title VII and FCRA claims are therefore dismissed without prejudice.

**C. ADA Retaliation**

Likewise, Plaintiff fails to allege that any adverse action was causally related to his complaints regarding disability discrimination and mistreatment, requests for disability-related leave and support and submission of an EEOC charge alleging disability discrimination. The ADA protects an individual from retaliation for "oppos[ing] any act or practice made unlawful by the [ADA]." 42 U.S.C. § 12203(a). ADA retaliation claims are assessed under the same framework employed for Title VII retaliation claims. Parker v. Econ. Opportunity for Savannah-Chatham Cnty.

Area, Inc., 587 F. Appx. 631, 633 (11th Cir. 2014) (citing Stewart v. Happy Herman's Cheshire Bridge, Inc., 117 F.3d 1278, 1287 (11th Cir. 1997) (requiring a Plaintiff claiming ADA retaliation show (1) that he engaged in a statutorily protected activity; (2) that he suffered an adverse action; and (3) a causal link between protected activity and adverse action)).

Plaintiff claims he engaged in activity protected by the ADA when he complained about disability discrimination and mistreatment, requested disability-related leave and support, and submitted an EEOC charge alleging disability discrimination.[13] See Compl. at ¶ 78. As established above, even if Plaintiff sufficiently alleges adverse actions, the complaint does not plausibly allege facts from which the court could infer causation. The complaint does not allege an individual within Human Resources or Management that was aware of Plaintiff's disability or who Plaintiff complained to about disability discrimination. See id. at ¶ ¶ 45, 46. Plaintiff alleges that Dawn Fabian and Ms. Diciurcio were responsible for placing him on paid administrative leave, Compl. at ¶ 47, but does not allege that either

[13] Plaintiff's shotgun complaint does not make clear which complaints lodged with HR or management were related to disability discrimination, and which were related to the racially discriminatory behavior he believed Ms. Morris was exhibiting. See, e.g., Compl. at ¶ 45 ("Plaintiff sent emails to Human Resources about the ongoing hostile work environment and discriminatory treatment); Compl. at ¶ 46 ("Plaintiff had communicated concerns regarding Ms. Morris's discriminatory and retaliatory conduct to Human Resources and Defendants' management"). Regardless of the complaints' nature, Plaintiff's ADA retaliation claims fail to allege causation. Thus, for the purposes of the motion to dismiss, the court assumes that discrimination-related complaints lodged after Plaintiff returned from his mental-health-related leave refer to disability discrimination.

individual was aware of the disability-related complaints or requests he had made, including his EEOC charges. Id. at ¶ ¶ 45, 46, 58, 60. Further, Plaintiff does not allege that either individual was the decision-maker responsible for reassigning his region, stripping him of his benefits, or requiring him to repay wages. See id. at ¶ ¶ 54, 55. Thus, because Plaintiff's complaint fails to allege a plausible causal link between Plaintiff's alleged protected acts under the ADA and the adverse actions he faced, Plaintiff's ADA retaliation claim is dismissed without prejudice.

### D. Family Medical Leave Act Retaliation

Plaintiff alleges that PNC retaliated against him for using protected FMLA leave by denying him support upon his return from leave, acting with hostility and scrutiny toward Plaintiff, placing Plaintiff on administrative leave, reassigning him to another region, and "stripping" him of benefits. Id. at ¶ 132. Defendant moves to dismiss Plaintiff's FMLA retaliation claim, arguing that Plaintiff fails to plead facts sufficient to allege that the alleged hostility, scrutiny, placement on leave, reassignment or loss of benefits rise to the level of an adverse action. See Def. Mot. at 18. Further, Defendant argues that Plaintiff has not pled that the decision-maker, Ms. Diciurcio, had knowledge of the Plaintiff's protected activity and thus, fails to plead retaliation under the FMLA. See id. at 19. Plaintiff argues his EEOC complaint makes clear that Ms. Diciurcio knew of Plaintiff's FMLA leave and personally participated in putting him on paid administrative leave. See Pl. Resp. at 18. Plaintiff complaint fails to sufficiently allege facts to support its claim.

To plead an FMLA retaliation claim, a plaintiff must allege that he (1) engaged in a protected activity under the FMLA; (2) suffered an adverse employment action; and (3) the adverse action was causally related to the protected activity.[14] See Pereda v. Brookdale Senior Living Communities, Inc., 666 F.3d 1269, 1275 (11th Cir. 2012). A protected activity under the FMLA includes requesting or taking qualifying FMLA leave.[15] See 29 C.F.R. § 825.220(a)(1), (c). The adverse employment action must be material, meaning it must be one that could dissuade a "reasonable worker" from engaging in protected activity. Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006). To plead a causal connection, the plaintiff must allege that the decision-maker was aware of the protected conduct at the time of the adverse

---

[14] In the 11th Circuit, claims for retaliation under the FMLA are analyzed under the same general legal framework as retaliation claims under Title VII, FCRA and ADA. See Bentley v. Orange County, Fla., 445 F. Appx. 306, 309 (11th Cir. 2011) (citing Strickland v. Water Works & Sewer Bd. of the City of Birmingham, 239 F.3d 1199, 1207 (11th Cir.2001); Wascura v. City of S. Miami, 257 F.3d 1238, 1248 (11th Cir.2001); Burlington Northern & Santa Fe Ry. v. White, 548 U.S. 53, 68 (2006)).

[15] As a threshold matter, when bringing a suit under either claim, the plaintiff must demonstrate that he was entitled to a benefit by alleging that he is an eligible employee, employed by a covered employer, qualified for leave under the FMLA. Hurley v. Kent of Naples, Inc., 746 F.3d 1161, 1166 (11th Cir.2014); see 29 U.S.C. § 2612(a). An employee is eligible for FMLA leave, as relevant here, (1) "in order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition;" or (2) "because of serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(C), (D). A "serious health condition" under the FMLA is an "illness, injury, impairment, or physical or mental condition that involves" either "inpatient care," or "continuing treatment by a healthcare provider." 29 U.S.C. § 2611(11), (A)–(B). Plaintiff alleges he was entitled to two periods of leave (and was granted leave) first to care for his wife after surgery and second for a serious health condition. Compl. ¶ ¶ 36–39.

employment action. See The Krutzig v. Pulte Home Corp., 602 F.3d 1231, 1235 (11th Cir. 2010) (explaining ultimately, plaintiff will have to show that the decision-maker knew of disability). See e.g., Brackett v. TSE Industries, Inc., No. 8:23-cv-1549-WFJ-JSS, 2023 WL 8806249 at *4 (M.D. Fla. 2023) (citing Brungart v. BellSouth Telecommunications, Inc., 231 F.3d 791, 799 (11th Cir. 2000)); Diaz v. Robert L. Lipton, Inc., No. 24-cv-61577, 2025 WL 3689522 at *5 (S.D. Fla. 2025) (citing Jones v. Gulf Coast Health Care of Del., LLC, 854 F.3d 1261, 1271 (11th Cir. 2017)); (Litterdragt v. Miami-Dade Cnty., No. 24-24737-Civ-TORRES, 2015 WL 13755504 at *6 (citing Goldsmith v. City of Atmore, 996 F.2d 1155, 1163 (11th Cir. 1993)).

Here, Plaintiff's shotgun complaint fails to allege causation. Plaintiff alleges that upon his return from FMLA leave in August, he was immediately met with a hostile work environment and retaliatory environment. See Compl. at ¶ 43. He alleges that Ms. Diciurcio provided no assistance or support, and just weeks after he returned, Ms. Diciurcio told him, "If I were you, I would resign." Id. at ¶ ¶ 42, 47. Plaintiff also alleges that Defendant has "stripped [him] of all employment benefits" and has demanded he repay wages received during his administrative leave. Id. at ¶ ¶ 54, 55. Nonetheless, as established above, paid administrative leave does not amount to an adverse employment action that satisfies a claim for retaliation. See Decoste v. City of Boynton Beach, 818 F.Supp.3d 1360, 1382–83 (S.D. Fla. 2026) (collecting cases). Plaintiff also alleges that after he was placed on administrative leave, his region was reassigned, he was asked to repay wages and was stripped of benefits. See Compl. at ¶ 49. Though Plaintiff claims that the reassignment of his

region signaled a permanent removal, he does not allege that the decision-maker (whom he does not identify) who reassigned his region, asked him to repay wages or stripped him of his benefits was aware that he took FMLA leave. See Compl. at ¶ 49. Further, "the reduction and reassignment of duties" does not constitute an adverse action where they are "means of accommodating" leave. Hyde v. K.B. Home, Inc., 355 F. Appx. 266 (11th Cir. 2009). Indeed, though Plaintiff's FMLA retaliation claim alleges causation with more particularity and closer temporal proximity than his Title VII and FCRA claims, he still fails to identify a decision-maker who knew of his FMLA leave and decided to strip him of his benefits and demand he repay wages. See Compl. Further, for the reasons established above, the shotgun nature of his complaint fails to identify which adverse actions are tied to which protected act, making it impossible to decipher allegations of causation. See generally id. Thus, Plaintiff fails to state a claim for FMLA retaliation and the claim is dismissed without prejudice.

**E. Family Medical Leave Act Interference**

Plaintiff claims that PNC interfered with his right to take leave under the FMLA by undermining his ability to take leave, impairing his ability to return to work, using his leave status against him, coordinating with Lincoln financial to interfere with his benefits, and creating barriers to Plaintiff's resumption of job duties upon his return. Compl. at ¶ 120. Defendant moves to dismiss Plaintiff's claims for interference under the FMLA, arguing that Plaintiff's allegations "preclude" an FMLA interference claim because Plaintiff acknowledges he applied for and was

granted FMLA leave, and does not allege that he was denied FMLA leave at any point. Def. Mot. at 15–16. Plaintiff responds that Ms. Evans, benefit analyst at PNC coordinated with Lincoln Financial to void Plaintiff's short-term disability claim and deny a subsequent leave claim. See Pl. Resp. at 20-21.

To plead an FMLA interference claim, an employee must allege that he "was entitled to a benefit under the FMLA that was denied." Norman v. H. Lee Moffitt Cancer Ctr. & Rsch. Inst., Inc., No. 21-12095, 2023 WL 2146593 at *2 (11th Cir. 2023) (citing 29 U.S.C. § 2615(a)(1); Drago v. Jenne, F.3d 1301, 1306 (11th Cir. 2006)). An employee has the right following FMLA leave "to be restored by the employer to the position of employment held by the employee when the leave commenced" or to an equivalent position. 29 U.S.C. § 2614(a)(1)(A); see also 29 C.F.R. § 825.214(a). Where the employer did not deny leave that plaintiff requested, the plaintiff cannot establish an FMLA interference claim, "even when the employer terminated her and prevented her from the continued use of such leave." Norman, 2023 WL 2146593 at *2 (citing Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1275 (11th Cir. 1999); Munoz v. Selig Enters., Inc., 981 F.3d 1265, 1275 (11th Cir. 2020)).

Plaintiff alleges that he took FMLA leave May 14 through 26, 2024, and again June 21 through August 26, 2024. See Compl. at ¶¶ 36–39. Plaintiff also alleges, however, that "Robin Evans at Defendant coordinated with Lincoln Financial and told them Plaintiff was on administrative leave, suggesting that they should void his short-term disability claim," and that his disability claim was indeed, voided. Id. at ¶ ¶ 50–53. Plaintiff's complaint is vague, but when read with his second EEOC

charge, which the court incorporates by reference, the court can infer that he applied for leave, it was granted, but then subsequently denied. See Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005) (allowing incorporation by reference even where the document was not attached if it is material and undisputed); see 2025 EEOC Form at 2 (Plaintiff applied for FMLA leave and "it was approved then declined as PNC was interfering with [his] FMLA protection along with managing company Lincoln Financial"). However, in the paragraphs constituting Count VI for FMLA Interference, the Complaint contains none of the necessary factual allegations supporting the claim, other than he suffered from a serious health condition, and that he requested and was granted FMLA leave twice. Compl. at ¶ ¶ 113–125. The necessary factual allegations are strewn throughout the complaint in a shotgun fashion, or in the EEOC charge. Anderson, 77 F.3d at 366 (a shotgun complaint which makes it "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief," they are not tolerated because they "waste scarce judicial resources").[16] Because the complaint does not connect factual allegations to

[16] Moreover, Plaintiff does not allege that when he returned from either period of FMLA leave, he was restored to an inferior position. See Compl. Plaintiff claims that upon his return from FMLA leave in August, 2024, he was not provided with sufficient assistance or support to resume his duties. Id. at ¶ 42. The FMLA does not contemplate an employee's right to additional support upon his return from leave, so long as the employee is reinstated to the same or equal position. See, e.g., Holton v. First Coast Service Options, Inc., 703 F. Appx. 917, 922 (11th Cir. 2017) (Defendant did not interfere with Plaintiff's FMLA rights where Plaintiff sought to return to her position with a modified schedule and Defendant refused to accommodate).

the claim, Plaintiff fails to state a claim for which relief can be granted, and the FCRA interference claim is dismissed without prejudice.

**CONCLUSION**

Plaintiff's complaint is a shotgun pleading and accordingly must be dismissed with leave to amend according to Rule 8 of the Federal Rules of Civil Procedure. Moreover, all counts within Plaintiff's complaint fail to state a claim on which relief can be granted and therefore even if the complaint were not a shotgun pleading, it would need to be dismissed without prejudice, with leave to amend.

Accordingly, it is

**ORDERED** that Defendant's motion to dismiss is GRANTED; and it is further

**ORDERED** that Plaintiff's complaint is dismissed without prejudice; and it is further

**ORDERED** that Plaintiff may file an amended complaint on or before 21 days from the date of this Order.

/s/ Claire R. Kelly
Claire R. Kelly, Judge*

Dated: September 9, 2026
New York, New York

* Judge Claire R. Kelly, of the United States Court of International Trade, sitting by designation.